THE DiBIASE CORPORATION *vs.* LISA JACOBOWITZ & others,
trustees.[1]

No. 96-P-377.

Essex. January 30, 1997. - August 15, 1997.

Present: ARMSTRONG, GILLERMAN, & LENK, JJ.

Further appellate review granted, 426 Mass. 1103 (1997).

*Condominiums,* Master deed, Common area. *Real Property,* Condominium.

The clear language of a condominium project master deed and plans recorded
    demonstrated the developer's intent that an entire parcel constituted the
    condominium, with the result that, where the developer's reserved right to
    later construct additional buildings and improvements by amending the
    master deed had expired, the land on which those phases were to have
    been built was owned by the extant unit owners as tenants in common in
    proportion to their respective undivided interests. [363-366]

CIVIL ACTION commenced in the Superior Court Department on
October 6, 1993.

The case was heard by *Thayer Fremont-Smith,* J.

*Seth Emmer* for the defendants.

*Thomas E. Beatrice* for the plaintiff.

LENK, J. The plaintiff is the declarant of a 268-unit residential
condominium in Salem called Pickman Park Condominium,
which was constructed in multiple phases. The defendants are
members of the board of trustees for the unit owner organiza-
tion of the condominium.

In 1993, the declarant, also referred to more commonly as the
developer, brought suit seeking declaratory and injunctive relief
as to two matters: its right to finish construction of the last two
sub-phases of the condominium, and its ownership interest in
the land upon which such sub-phases were to be built. The unit
owners by counterclaim sought countervailing declaratory and
injunctive relief, requesting determinations that the developer's

[1] Of the Pickman Park Condominium Trust.

right to build the last two sub-phases had expired and that the land in question was part of the condominium's common area.

Following a bench trial, the judge declared that the developer's right to construct the last two sub-phases had expired and that the land on which those phases were to be built is owned by the developer. The unit owner trustees appeal the latter part of the judgment; no cross appeal was filed. The only issue before us, then, is whether the land upon which the last two sub-phases were to be built is condominium common area or is owned by the developer. Because we conclude that the subject land is common area, we reverse.

*Background facts.*[2] The developer recorded the master deed for the condominium on June 26, 1985, pursuant to G. L. c. 183A, § 8. The master deed described the premises constituting the condominium as encompassing the entire parcel of 46.2 acres of land, including the subject land. Nothing in the record suggests that the parcel is divisable or is comprised of more than one legal lot. At the time the master deed was recorded, the developer had constructed twenty-eight units denominated sub-phases Ia and Ib of Phase I and, accordingly, recorded the site plans and "as built" plans required by G. L. c. 183A, § 8, as to those first two sub-phases of Phase I. The master deed specifically reserved to the developer for seven years the right to amend the master deed so as to submit to c. 183A[3] additional phases and sub-phases, as depicted on referenced plans, upon substantial completion of the construction of additional buildings.[4]

Subsequent sub-phases of the condominium (Ic-h; IIa-c;

---

[2]We take these facts from the judge's findings, supplemented by the uncontroverted evidence of record.

[3]Chapter 183A provides that a condominium is created when it is "submitted" to the provisions of the chapter. See G. L. c. 183A, § 1 (definition of "condominium"); § 2 (chapter applies when owner "submits" property to its provisions); § 16 (property "submitted" by recording of master deed).

[4]Paragraph 16(a) of the master deed provides, in pertinent part, that

"Declarant hereby reserves the right to amend the Master Deed, from time to time, without consent of any Unit Owner or mortgagee, so as to subject all or any portion of Phase I, and its subphases and/or Phase II, and/or Phase III in any order, as shown on the plans referred to and incorporated in this Master Deed to Chapter 183A; provided, however, that the right to amend the Master Deed, and thereby include the land, buildings, units therein, improvements thereon and any Common Areas and Facilities in the Condominium, shall terminate, with

IIIa-d) comprising 240 units were thereafter constructed and the master deed was duly amended a number of times to reflect the particular buildings added, their location, the location of common areas and the changes in beneficial ownership by unit owners. "As built" plans and site plans for the additional buildings were also recorded.

The final two planned sub-phases (IIIe-f) were not constructed within the seven-year period reserved to the developer for phased development, and no master deed amendments, site plans, or "as built" plans pertaining to such sub-phases were recorded. The trial judge found that because no documents pertaining to sub-phases (III e-f) were ever recorded, the developer "never effectively added sub-phases 3e and 3f to the condominium." He based that finding upon his determination that "when the Master Deed was recorded, the only site plans and 'as built' building plans recorded were those pertaining to phase I, subphase Ia and Ib. As such plans are a mandatory part of a Master Deed pursuant to G. L. c. 183A, § 8, the Master Deed was incomplete and hence inadequate to add subphases II and III to the condominium without further amendment." He then declared that "the land constituting Phase III, subphases 3e and 3f, has not been effectively conveyed by the DiBiase Corporation to the Pickman Park Condominium, and that the land constituting Phase III, subphases 3e and 3f is owned by DiBiase Corporation free and clear of any legal or equitable claim thereto by Pickman Park Condominium."

*Discussion.* The unit owner trustees contend that the judge erred as matter of law in ruling that title to the subject land remained in the developer. They observe that the master deed's description of the premises constituting the condominium included the entire 46.2 acre parcel. They suggest that the trial judge misconstrued both the requirements of G. L. c. 183A, § 8, and the master deed's language concerning the role of master deed amendments in the phasing process. This led the judge to

respect to any Phase or Phases, or any portions thereof, theretofore not included in the Condominium within seven (7) years from the date hereof . . . . Any amendment of the Master Deed shall contain, with respect to the portion of all of the Phase or Phases referred to therein, all of the particulars required by Chapter 183A. Declarant shall not amend the Master Deed to include additional buildings until the construction of such buildings has been substantially completed."

conclude, erroneously they argue, that subsequent conveyances of land are necessary when adding phases of the condominium. The developer, in contrast, contends that a valid condominium exists only as to the land, buildings, and improvements thereon concerning which all requirements of G. L. c. 183A, § 8, had been met at the time submitted to c. 183A. Here, when the master deed was originally recorded, it was accompanied by site plans and "as built" plans only for sub-phases Ia and Ib. The developer argues that, accordingly, a valid condominium existed only as to the land, buildings, and improvements constituting those two sub-phases. It was only with the subsequent amendments pertaining to later phases that, on this view, the land, buildings, and improvements constituting those phases were submitted to c. 183A and became part of the condominium.

We think it clear from the language of the master deed and plans recorded in 1985 that the developer intended the entire 46.2 acre parcel to constitute the condominium along with the extant·initially constructed buildings and improvements in sub-phases Ia and Ib. The buildings and improvements which the developer planned to construct in subsequent development phases pursuant to its reserved rights would be constructed on land already submitted to c. 183A, i.e., on common area land. As to those subsequent phases, the developer reserved the right to amend the master deed in order to submit to c. 183A those later constructed buildings and improvements.

Neither the language of paragraph 16(a) of the master deed nor the requirements of c. 183A, § 8,[5] alter this analysis. While perhaps somewhat inartful in its reference to land as being among those things the developer reserved the right to add via amendment of the master deed, the plain import of paragraph

---

[5]As noted almost sixteen years ago, the drafters of G. L. c. 183A, "probably did not anticipate phased condominiums." *Barclay* v. *DeVeau*, 11 Mass. App. Ct. 236, 247 (Greaney, J., dissenting), *S.C.*, 384 Mass. 676 (1981). Nonetheless, as our appellate decisions have recognized, phased condominiums are a reality notwithstanding statutory silence on the subject. See *Tosney* v. *Chelmsford Village Condominium Assn.*, 397 Mass. 683 (1986); *Podell* v. *Lahn*, 38 Mass. App. Ct. 688, 689 n.3 (1995); *Suprenant* v. *First Trade Union Sav. Bank*, 40 Mass. App. Ct. 637 (1996). As with other "mutations which creative real estate lawyers have contrived," *Barclay*, 11 Mass. App. Ct. at 247, where the statute does not specifically address the issue in question, a flexible interpretation of the statute, viewed as an enabling act, is to be preferred. See *Barclay* v. *DeVeau*, 384 Mass. at 682; *Tosney*, *supra* at 686-687. We construe § 8 in this light.

16(a) permits the developer a limited period of time within which further to develop, in phases, the condominium already subject to c. 183A. Indeed, the amendments that the developer recorded in this regard are instructive insofar as they do not purport to convey additional land when adding phases; instead, the amendments reflect the particular buildings added, their location, the location of remaining common areas, and the changes in beneficial ownership by unit owners.

The developer reserved the right to conduct phased development, but had no obligation under the terms of the master deed to do so.[6] Had no further phases beyond the first two sub-phases been developed, the Pickman Park Condominium would consist of the sub-phase Ia and Ib buildings and improvements situated upon the 46.2 acre parcel of land described in the master deed as the "premises." There is no indication that the developer deviated from the requirements of G. L. c. 183A, § 8, in 1985 as to the parcel of land submitted to the statute or as to then existing buildings and improvements situated thereon, i.e., sub-phases Ia and Ib. The descriptive and "as built" plan requirements of § 8, sensibly construed, pertain only to existing buildings and improvements submitted to the statute. As the words connote, "as built" plans, in particular, contemplate edifices already in being. Section 8's requirement of "as built" plans can have no application either to land or to buildings yet to be constructed. A valid condominium was thus created in 1985; the master deed was neither incomplete nor inadequate with respect to the land, buildings, and improvements then submitted to c. 183A.

As to subsequent phases and sub-phases, amendments to the master deed were necessary in order to include within the condominium later constructed buildings and improvements and to comply with the requirements of § 8. Hence, "as built" and other descriptive plans pertaining to the later constructed buildings and improvements were recorded as part of the phasing amendments. Section 8 required nothing further as to the land, already submitted to c. 183A and described pursuant to § 8(*b*),

---

[6]Paragraph 16(b)(i) reserves to the developer the right "[t]o develop and construct additions to the Condominium, including, without limitation, buildings, roads, ways, utilities and other improvements and amenities pertaining thereto; provided, however, that nothing contained herein shall obligate Declarant to commence or complete construction of additional buildings or other improvements on the land reserved for phasing."

on which those new buildings and improvements were constructed. The master deed described the entire parcel of land from the outset, and the entire parcel of 46.2 acres was common area from the time the master deed was recorded in 1985. It is owned by the unit owners as tenants in common in proportion to their respective undivided interests. *Kaplan* v. *Boudreaux*, 410 Mass. 435, 438 (1991). *Noble* v. *Murphy*, 34 Mass. App. Ct. 452, 456 (1993).

We conclude that it was error to declare that title to the land upon which the last two sub-phases were to be built remained in the developer. We remand this matter to the Superior Court for entry of a declaratory judgment consistent with this opinion, declaring that title to the subject land is in the defendants.

*So ordered.*