SULLIVAN, J.
*279 Beechwood Village Condominiums is an age-restricted condominium development built in phases. After some but not all of the phases had been built, the developer ceased operations at the site. A dispute arose between the developer's mortgage lender and the condominium trust concerning the right to construct additional units. On cross motions for summary judgment, a judge of the Land Court granted partial summary judgment to the lender, USAlliance Federal Credit Union (USAlliance), and intervener Sean P. Fallon.[2] The judge declared that USAlliance held a mortgage interest in the undeveloped common area, and that the developer's reserved phasing rights were largely intact, but that two easement rights had expired. After entry of final judgment, the Beechwood Village Condominiums Trust (condominium trust), USAlliance, and Fallon each appealed.
We conclude that all of the land associated with the condominium development, including the common area, was submitted to the provisions of G. L. c. 183A, the Condominium Act (act or statute), by the master deed,[3] and that the effect of the subsequent mortgage discharges by the relevant lenders upon the sale of each unit was to release the lenders' mortgage interest in all of the common area. The unit owners became the fee simple owners of all of the common area as tenants in common, including the undeveloped common area. The mortgage interest in the phasing and easement rights reserved by the developer, however, was not released by the partial discharges. We further conclude that the developer retained its phasing rights for an unlimited period of time, but that the construction easement contained in the master deed -- to pass over "the Common Areas and Facilities" (common area) for purposes of constructing additional phases -- expired seven years after the master deed was recorded.
Background. 1. The development, master deed, and mortgages. The background facts are undisputed. On May 11, 2006, Mark S. Gardner, as trustee of the Mark S. Gardner Trust, sold to Jeffrey *280 S. Reale, *87 as trustee of the Beechwood Village Realty Trust (developer), a thirty-seven acre parcel of land referred to by the parties as lot 7 on Beech Street in Rockland. On the same day, the developer granted a first mortgage to USAlliance to secure payment of a note in the original principal amount of $ 2,800,000 (2006 USAlliance mortgage),[4] and a second mortgage to Gardner to secure payment of a note in the original principal amount of $ 1,900,000 (Gardner mortgage).[5] On March 9, 2007, the developer submitted the entirety of lot 7 to the provisions of the act by recording the master deed in the registry of deeds. The master deed stated that all land and appurtenances, and phase one of the development, were submitted to the statute. The master deed also reserved to the developer (referred to as declarant) the right to create additional phases. See G. L. c. 183A, § 16.
The master deed provided that the condominium could include up to seventy-nine age-restricted "single family free-standing dwelling" units to be constructed in up to thirty phases. A site plan depicting seventy-nine lots[6] was recorded with the master deed.[7] Article 4A & B of the master deed reserved for the developer phasing and construction rights and associated easements as set forth in full in the Appendix, and discussed in greater detail, infra. Article 4A set out the developer's phasing rights. Article 4B(i) reserved, among other things, certain construction easements *281 for a period of seven years, while article 4B(ii) and (iii) granted, without temporal limitation, other easement rights for passage to and from buildings and for utilities.
Phase one, consisting of three units, was constructed before the master deed was recorded.[8] The three units were sold to third-party purchasers shortly after the master deed was recorded, together with each unit's undivided 33.3 percent share of the common area. The master deed defined the common area to include "the Condominium land all parts of the building and improvements thereon, other than the Units." That is, the common area included not only the facilities and the entirety of lot 7, but also the land under the individual units, albeit subject to exclusive use restrictions set forth in the master deed.
*88 Thus, each unit sat on land designated as a common area, but the unit owner held an exclusive use easement in the lot on which the unit was located.[9] An exhibit to the master deed reflected that the entirety of the common area was conveyed when the three units in phase one were sold, subject to provisions in the master deed that permitted dilution of the respective percentage interests as additional units were built and sold. The developer did not reserve a reversionary interest in any portion of the common area. Partial discharges of the mortgage were issued to each of the three phase one unit owners and recorded at or after the time the master deed was recorded.[10]
The original USAlliance mortgage was refinanced on April 11, 2007 (2007 USAlliance mortgage). The 2007 USAlliance mortgage secured an adjustable rate promissory note in the original principal amount of $ 4,700,000, and granted USAlliance a mortgage interest in all of the developer's interest in and to the condominium land, unsold units, all buildings erected or to be erected, and all improvements including all paved walkways, driveways, and parking areas, among others. On April 11, 2007, Gardner signed an agreement subordinating his mortgage to the 2007 USAlliance mortgage. Gardner assigned his mortgage to USAlliance in 2012, so that by *282 the time of this litigation, USAlliance held both Gardner's 2006 mortgage and its own 2007 mortgage. The notes have not been paid in full.
Pursuant to the phasing and easement rights reserved by the developer, multiple phases of the condominium, totaling fifty-four units,[11] were constructed between 2007 and 2011. As each phase was constructed, the corresponding units were added to the condominium by amendment to the master deed. The record contains copies of recorded revised site plans for each phase, which indicate that units have been built fronting on each of the condominium's proposed roadways. Only scattered single lots, on what appear to be already constructed roadways, have yet to be built on.
2. Partial discharges and releases. Before he assigned his mortgage to USAlliance, Gardner executed and recorded a "Partial Discharge of Real Estate Mortgage" when each unit was sold.[12] USAlliance also executed partial releases when units subject to its mortgage were sold.[13]
*89 The project ran into severe financial difficulties caused in part by the real estate market downturn. No additional phases were added after December 23, 2011.
On April 29, 2016, the condominium trust commenced this action in the Land Court seeking declarations that can be divided into three general categories: (i) the 2007 USAlliance mortgage no longer encumbers any interest in the condominium land or buildings; (ii) the developer's development, phasing, and easement *283 rights expired on March 9, 2014, seven years after the master deed was recorded; and (iii) the common area of the condominium is not subject to any development without consent of seventy-five percent of the unit owners. USAlliance, by way of counterclaim, sought declarations that (i) as assignee of the Gardner mortgage, it has a mortgage interest in the condominium land superior to the master deed, securing both the loan from Gardner and all debts owed to USAlliance by the developer;[14] (ii) USAlliance continues to have a mortgage interest in the phasing rights pursuant to the 2007 mortgage; and (iii) the phasing and easement rights set forth in the master deed remain enforceable. The parties filed cross motions for summary judgment.
A judge of the Land Court made several declarations that are not challenged on appeal and which we take as final for purposes of this opinion.[15] The contested issues are as follows. The judge specifically rejected the condominium trust's argument that the Gardner mortgage had been subordinated to the master deed and concluded that "[t]he Partial Discharges did nothing more than shrink, unit by unit, the areas subject to the security interests established in the Gardner Mortgage." For that reason, he declared that USAlliance, as assignee of the Gardner mortgage, "has a security interest in the premises described in that mortgage [lot 7] that is superior to any interest in those Premises that arises under or subsequent to the Master Deed," except to the extent that the Gardner partial discharges released from the mortgage the specific units and not the associated percentage interest in the common area.
The judge then declared that the developer's rights under two parts of article 4 of the master deed had expired. Specifically, the affected development rights are (1) "all of [the developer's easement]
*284 rights under article 4(B)(i)," and (2) the developer's "right and easement in and over phase one of the Condominium, as described in article 4(A), 'to construct the buildings, roadways and other amenities, and to construct drainage and perform grading on and over roadways and other amenities, and that portion of the premises shown as subsequent *90 phases on the Condominium Plans....' " He concluded that "[n]one of [the developer's] rights under article 4 has expired except for the two rights described."
The parties jointly sought clarification of the judge's decision. The judge declined to answer the parties' question whether the developer was "prevented from building on the undischarged lots because the expiration of the phasing rights contained in Articles 4A and 4(B)(i) prevents access to those lots." The judge reasoned, in part, that there were no present plans to build and the prevailing parties, USAlliance and Fallon, had not asked for a declaration as to buildability. The net result of the judgment was that USAlliance retained a mortgage interest in the common area including the as yet unbuilt areas on the site plan, but the nature and scope of its development rights remained in doubt. All remaining parties appealed from the judgment. See note 1, supra.
Discussion. We review a summary judgment record de novo to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991). When reviewing cross motions for summary judgment, however, "we view the record in the light most favorable to the party against whom the judge allowed summary judgment ...." Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass. App. Ct. 515, 516, 947 N.E.2d 1090 (2011). See Welch v. Barach, 84 Mass. App. Ct. 113, 118-119, 993 N.E.2d 742 (2013). "Because the judge does not engage in fact finding in ruling on cross motions for summary judgment, we owe no deference to his [or her] assessment of the record." Marhefka, supra at 517, 947 N.E.2d 1090.
Interpretation of the master deed and partial releases is at the heart of this dispute. "Principles of deed and contract interpretation guide our discussion of the issues. In interpreting a deed, as with any contract, we 'must construe all words that are plain and free from ambiguity according to their usual and ordinary sense.' " Boston Redev. Auth. v. Pham, 88 Mass. App. Ct. 713, 717, 42 N.E.3d 645 (2015), quoting Suffolk Constr. Co. v. Lanco Scaffolding Co., 47 Mass. App. Ct. 726, 729, 716 N.E.2d 130 (1999). "Where the language of a contract is *285 clear and unambiguous, summary judgment is an appropriate vehicle for judicial interpretation because the court may interpret the meaning of the contract as a matter of law without resort to extrinsic evidence or determinations of fact." Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 440, 854 N.E.2d 138 (2006). Here, the parties do not claim that any of the documents at issue are ambiguous or that summary judgment was otherwise inappropriate.
We conduct our review with well-settled principles of condominium law in mind. "[D]eeds should be construed as to give effect to the intent of the parties, unless inconsistent with some law or repugnant to the terms of the grant" (quotation and citation omitted). Queler v. Skowron, 438 Mass. 304, 311, 780 N.E.2d 71 (2002). "General Laws c. 183A is essentially an enabling statute, setting out a framework for the development of condominiums in the Commonwealth, while providing developers and unit owners with planning flexibility. Such flexibility is particularly important with respect to phased condominium developments where long-term financial and market conditions may be uncertain. While G. L. c. 183A mandates that certain minimum requirements for establishing *91 condominiums be met, those matters that are not specifically addressed in the statute are to be worked out by the involved parties" (citation and footnote omitted). Id. at 312-313, 780 N.E.2d 71. So long as the statutory minimum is met, the master deed may modify the statutory definition of common area contained in c. 183A, and "[t]hus, the master deed itself provides 'the rules of the game' ...." Flynn v. Parker, 80 Mass. App. Ct. 283, 289, 952 N.E.2d 934 (2011).
1. Ownership of lot 7. USAlliance contends that its mortgage interest in lot 7, as assignee of the Gardner mortgage, is superior to the rights and obligations contained in the master deed, and that its rights were never subordinated to the master deed because the Gardner mortgage was recorded before the master deed submitting lot 7 to G. L. c. 183A. Therefore, USAlliance claims, it has the right to foreclose upon the entirety of lot 7 free of the master deed, subject only to the unit owners' interests in their units, and what USAlliance refers to as the "in common rights" of the unit owners after the partial discharges were recorded. Fallon and USAlliance argue on appeal that the Gardner partial discharges released only the Gardner mortgage interest in the units; they did not release the Gardner mortgage interest in each of the unit owners' respective percentage interest in the common area. The judge agreed and concluded that as assignee of the Gardner mortgage, "USAlliance has a senior interest" in all of lot 7 except *286 for the exclusive use areas occupied by the units that had been discharged, as well as the units themselves.
The condominium trust, on the other hand, makes a very different argument. It contends that when Gardner issued partial discharges of individual units, he released each respective unit owner's undivided percentage ownership interest in all of the common area, which, since inception has amounted to the entirety of lot 7. Thus, the condominium trust contends, USAlliance as assignee of the Gardner mortgage has no remaining mortgage interest in any of the condominium land, including the common area. We conclude that under G. L. c. 183A, § 5 (b ) (1), the Gardner partial discharges did release the unit owners' interest in the common area.
The parties' dispute goes to the basics of condominium ownership. The general rule has been described thus. " 'Ownership of a condominium unit is a hybrid form of interest in real estate, entitling the owner to both exclusive ownership and possession of his unit, ... and ... an undivided interest [as tenant in common together with all the other unit owners] in the common areas ...." Flynn, 80 Mass. App. Ct. at 288, 952 N.E.2d 934, quoting Berish v. Bornstein, 437 Mass. 252, 262, 770 N.E.2d 961 (2002). "A condominium unit owner is entitled to the exclusive ownership and possession of its unit, G. L. c. 183A, § 4, and to an undivided interest in the common areas in the same proportion as the value of [its] unit compared to the aggregate value of all the units. G. L. c. 183A, § 5." Kaplan v. Boudreaux, 410 Mass. 435, 438, 573 N.E.2d 495 (1991).[16]
There may be exceptions to the general rule, but this is not such a case. Consistent with the statute, the master deed itself makes it plain that the unit owners own the common area. Indeed, *92 while it is true that what is meant by a unit owner's "undivided interest" in the common area as used in G. L. c. 183A, § 5, has been the topic of some debate, see Kaplan, 410 Mass. at 439-440, 573 N.E.2d 495, here the master deed defines the unit owner's "interest." Article 3E(iv) of the master deed specifically provides that "[e]ach Unit shall be entitled to an appurtenant undivided ownership interest in the Common Area and Facilities as set forth in Exhibit C ..., as said Exhibit C may hereafter be amended as additional phase(s) are *287 added to the Condominium" (emphasis added).[17] ,[18] Thus, the master deed, in harmony with the statute, provides that the fee interest in the common area is in the unit owners.[19] See DiBiase Corp. v. Jacobowitz, 43 Mass. App. Ct. 361, 366, 682 N.E.2d 1382 (1997), S.C., 427 Mass. 1004, 691 N.E.2d 548 (1998).[20]
DiBiase Corp. is instructive. There, an entire parcel had been submitted to the act and described in the master deed. This court held that the entire parcel was a common area from the time the master deed was recorded; "[i]t is owned by the unit owners as tenants in common in proportion to their respective undivided interests." DiBiase, 43 Mass. App. Ct. at 366, 682 N.E.2d 1382. As a result, title to land for the last two sub-phases of the development was in the unit owners. Id.[21] See generally *288 Commercial Wharf E. Condominium Ass'n v. Waterfront Parking Corp., 407 Mass. 123, 130 n.3, 552 N.E.2d 66 (1990) ("the undivided ownership interests of the condominium unit owners in the *93 common area ... is required by G. L. c. 183A, § 5 [c ]"). Contrast Queler, 438 Mass. at 311-312, 780 N.E.2d 71 (developer submitted defeasible fee to G. L. c. 183A, and undeveloped land did not become part of common area, where master deed provided that any undeveloped land at time phasing rights terminated would revert to developer).
As noted above, USAlliance and Fallon nonetheless argue that this case is different because the Gardner mortgage preceded the master deed and, therefore, the developer's submission of lot 7 to the act had no effect on Gardner's mortgage interest in lot 7. See, e.g., Mt. Holyoke Realty Corp. v. Holyoke Realty Corp., 284 Mass. 100, 106, 187 N.E. 227 (1933) (after granting mortgage, "mortgagor cannot create any easement in the land conveyed and thus diminish the estate granted to the mortgagee"). Had there been no partial discharges, this argument would have some force. These contentions ignore, however, the fact that when Gardner executed partial discharges of the first three units, he also released each of the three unit's appurtenant undivided one-third interest in the common area. The interest in the common area cannot be separated from the unit. General Laws c. 183A, § 5 (b ) (1), provides that "[t]he percentage of the undivided interest in the common areas and facilities shall not be separated from the unit to which it appertains, and shall be deemed to be conveyed or encumbered with the unit even though such interest is not expressly mentioned or described in the conveyance or other instrument."[22] We are presented with no provision of the master deed or the discharges, or anything else, to support why the terms of the master deed and § 5 (b ) (1) do not apply to Gardner's partial discharges.
As the units were sold, all of the common area was included with them. As more units were sold, the percentage interest of each unit in the common area was gradually reduced, but the ownership of the whole of the common area remained with the unit owners. We agree with the condominium trust that when Gardner executed the partial discharges of the first three units, and with each release granted thereafter, Gardner and USAlliance necessarily released their mortgage interests in all of the fee simple interest in the common area. The judge erred in concluding *289 that the releases granted by Gardner and USAlliance did not apply to the fee simple interest in the common area, and that USAlliance retained a mortgage interest in the common area.
2. Developer's reserved rights: phasing and easements. The condominium trust next contends that because Gardner discharged his mortgage interest in the units and the associated percentage interest in the common area, USAlliance, as assignee of the Gardner mortgage, has no enforceable mortgage interest in the development at all. To the contrary, the Gardner and USAlliance mortgages continue to encumber the developer's reserved development rights. The master deed provides that each unit (including its proportional interest in the common area) is subject to the phasing and easement rights reserved by the developer. The rights reserved to the developer did not, by operation of law or the master deed, become part of the condominium units or the common area. See Queler, 438 Mass. at 313-314, 780 N.E.2d 71 ; Commercial Wharf E. Condominium Ass'n, 407 Mass. at 130-131, 552 N.E.2d 66. Nor were they released by the Gardner or USAlliance partial releases of *94 the units. Moreover, as noted in note 5, supra, the Gardner mortgage expressly stated that it encumbered all rights of the developer, whether then existing or thereafter acquired. We conclude that the Gardner and USAlliance mortgages encumber the developer's reserved rights.
We turn then to the issue of the status of the developer's rights. "In a phased condominium development, groups or stages of units are completed over a period of several years and become part of the condominium by successive amendments to the master deed." Podell v. Lahn, 38 Mass. App. Ct. 688, 689 n.3, 651 N.E.2d 859 (1995). Here, the developer reserved phasing and construction rights in article 4A of the master deed and easements in article 4B(i-iv) of the master deed, as set forth in the Appendix. As noted supra, in interpreting those provisions, we apply principles of deed and contract interpretation to the master deed. See Boston Redev. Auth., 88 Mass. App. Ct. at 717, 42 N.E.3d 645. The language of the deed is "construed most strongly against" the grantor, in this case, the developer. Estes v. DeMello, 61 Mass. App. Ct. 638, 642, 814 N.E.2d 1 (2004).
The developer's right to construct the condominium in phases, reserved in article 4A, is unlimited in time. Contrary to the condominium trust's argument, the phasing rights did not expire after seven years under the terms of the construction easement set forth in article 4B(i) of the master deed. No rule of construction suggests that the seven-year limitation on the easement rights reserved in article 4B(i) modifies the rights reserved in article 4A. We agree with the judge that the phasing rights are unlimited in *290 time, and have not expired.[23]
The condominium trust sought a further declaration as to the viability of the reserved easement rights, and the impact of any remaining easement rights on the developer's right to develop the property. The parties have requested a determination whether the unexpired phasing and easement rights are sufficient to allow the developer access for purposes of further development, and to exercise its right to add additional phases. The judge ruled on the viability of the easements, but declined to enter orders regarding the developer's development rights. This choice was no doubt informed by the judge's determination that USAlliance retained a mortgage interest in the common area. We have come to a different conclusion regarding USAlliance's interest in the fee, one that changes the landscape of the case in a material way.
In the interest of judicial economy, we think it better to address USAlliance's interest in the developer's easement rights as well. Because we are in as good a position to interpret the master deed as the judge, there is no need to remand for the judge to make this determination. We conclude that the construction (and other) easement rights contained in paragraph 4B(i) expired on March 9, 2014, but that the other access easements reserved in 4B(ii)-(iv) remain in effect. These easement rights are, however, insufficient to allow access for further construction of additional phases.
The easement language in article 4B(i) is broad, covering "the easement, license, right and privilege to pass and repass by vehicle and on foot in, upon and over and to the Common Area and Facilities of the Condominium ... for all purposes, including *95 but not limited to transportation and storage of construction materials in order to complete construction work on the [c]ondominium." See Appendix. Those reserved easement rights explicitly include access "to complete construction work on the [c]ondominium." The broad access rights expressly reserved in article 4B(i) were reserved for only seven years, or the completion of all phases, whichever came first. "[W]hen contract language is unambiguous, it must be construed according to its plain meaning." A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transp. Auth., 479 Mass. 419, 431, 95 N.E.3d 547 (2018), quoting Balles v. Babcock Power Inc., 476 Mass. 565, 571-572, 70 N.E.3d 905 (2017). The plain meaning of the language is to limit the broad access easement for the construction *291 of additional phases to a period of seven years.
The phrase "to complete construction work on the [c]ondominium" is not repeated in the more narrow reservation of rights contained in article 4B(ii). See Appendix. Although unlimited in time, the developer's reservation in article 4B(ii) allows only "access to and from buildings located on other [p]hases for all purposes, including, but not limited to, transportation and storage of construction materials." If the seven-year limitation on construction of new phases in article 4B(i) is to have any meaning, we must construe article 4B(ii) as allowing access only to and from buildings already constructed, not access to undeveloped lots to construct new buildings. See McMahon v. Monarch Life Ins. Co., 345 Mass. 261, 264, 186 N.E.2d 827 (1962) ("a contract is to be construed to give a reasonable effect to each of its provisions if possible"). Article 4B(ii) is not broad enough to allow travel to portions of the condominium property for purposes of constructing additional phases or units.
Similarly, article 4B(iii) reserves to the developer the exclusive right to grant easements to install utilities for an unlimited period of time. That right simply does not allow access for the construction of additional phases.
We conclude, therefore, that the developer (currently) has no easement over the roadways to reach the undeveloped areas as shown on the plans attached to the master deed in order to construct additional phases. Were USAlliance to foreclose on its mortgages, it would be similarly limited.
Finally, the condominium trust sought a further declaration that "the common area of the [c]ondominium is not subject to any development without the consent ... of 75% of the owners of the beneficial interest." The condominium trust claims that the unit owners have the right under G. L. c. 183A, § 5 (b ) (2) (iii), and the master deed to revive expired development rights, but that a declaration that all of the developer's reserved phasing rights have effectively expired (or been rendered a nullity) is necessary to allow them to exercise their rights under § 5 (b ) (2) (iii).[24] The arguments on summary judgment did not raise this issue in any meaningful way, and the briefs in this court did not anticipate our disposition of the issues on appeal. We therefore decline to address *292 the argument in the first instance in this appeal. See Carey v. New England Organ Bank, 446 Mass. 270, 285, 843 N.E.2d 1070 (2006). We leave it to the parties and the judge on remand whether to further consider this issue. *96 Conclusion. The judgment is affirmed in part and vacated in part. Paragraphs A and C-F of the judgment are affirmed, as is so much of paragraph G that declares the developer's right and easement over phase one to have expired. The remaining portions of the judgment are vacated, and the matter is remanded for the entry of the following additional declarations: (1) the fee interest in the condominium land, lot 7, is part of the common area of the condominium, and as such is held in common by the unit owners; (2) USAlliance's mortgage interest in the condominium under both the Gardner mortgage and the 2007 USAlliance mortgage is limited to the developer's reserved rights; (3) the phasing rights reserved in article 4A have not expired; (4) the easement rights reserved in article 4B(i) have expired; and (5) the easement rights reserved in article 4B(ii) and (iii) have not expired but are insufficient to allow the developer access to construct additional units.
So ordered.
*293 APPENDIX .
Article 4 of the Master Deed for the Beechwood Village Condominiums provides as follows:
"4. Condominium Phasing
The Condominium is to be developed as a phased Condominium, each phase of which shall include one or more Units or one or more common facilities. Phase One of the Condominium consists of 3 Dwelling Unit[s], each situated on the Lot bearing the number identical to the Unit number and being Units 56, 58 and 79.
"A. Reservation of Right to Create Additional Phases
The Declarant intends, and hereby reserves the right, but not the obligation, to create as many as 30 additional phases .... All improvements intended for each future phase will be substantially completed prior to the addition to the Condominium of the phase in question.... Declarant reserves the right to grant mortgages on further phases at any time and from time to time, including all rights of Declarant to add phases, develop, own and sell Units, and all other rights reserved herein by Declarant, and all rights of Declarant under the Condominium Trust. When and if all phases are completed, the Condominium will contain seventy nine (79) units.
Said premises Phase One is submitted to the provisions of Chapter 183A and is subject to the right and easement hereby reserved by the Declarant to construct the buildings, roadways and other amenities, and to construct drainage and perform grading on and over roadways and other amenities, and that portion of the premises shown as subsequent phases on the Condominium Plans referred to hereinabove."
"B. Reservation of Construction Easements and Well Water Easements
(i) The Declarant hereby expressly reserves to itself, its successors and assigns, and its or their nominees, for a period ending seven (7) years next after the date on which this Master Deed is recorded, or upon the completion of all phases in the Condominium, whichever is first, the easement, license, right and privilege to pass and repass by vehicle and on foot in, upon and over and to the Common Area and Facilities of the Condominium (including but not limited to driveways, walkways and any EUA) for all purposes, including but not limited to transportation and storage of construction materials in order to complete construction work on the Condominium, provided that in the exercise of the rights reserved by the Declarant in this paragraph, the Declarant will not unreasonably affect the use and enjoyment of the Common Area and Facilities in the *97 phases already added to the Condominium. Nothing in this paragraph shall be deemed to create any rights in the general public.
(ii) The Declarant also reserves the exclusive right to grant temporary and/or permanent easements over and across the Condominium Land for access to and from buildings located on other Phases for all purposes, including, but not limited to, transportation and storage of construction materials.
*294 (iii) The Declarant reserves the exclusive right to grant easements and/or temporary easements over, under, through and across the common area of the Condominium Land for the purpose of installing any and all utility lines serving the units in the Condominium and such other equipment as may be necessary for the installation of the same.
(iv) The Declarant reserves to itself, its successors and assigns, and its or their nominees for the benefit of Declarant's land abutting the Condominium upon which Declarant intends (if feasible) to construct a Recreational Clubhouse and swimming pool, a right and easement in, over, through and under the Common Area of the Condominium, including all Exclusive Use Areas, to locate, drill and pump any and all wells, springs or other natural sources of water, including a right of way as necessary to construct and maintain any well, pump, or conduit, and to deliver said water to said abutting land.
"C. Reservation of Right to Change Phasing
The Declarant further reserves the right in the creation of subsequent phases (including the right to create sub phases within one or more phases) to change the order of such phases, to change potential configuration of units, to change number of units per phase, provided that in all instances the percentage of interest attributable to each such unit then existing shall be determined in a manner in conformity with the provisions of Chapter 183A as amended.
"D. Method of Adding Additional Phases
The Declarant may add additional phase(s) and the building(s) and Unit(s) therein to the Condominium by executing and recording with the Plymouth County Registry of Deeds amendment(s) to this Master Deed that shall contain the following information:
(i) An amended Exhibit B describing the building(s) being added to the Condominium;
(ii) An amended Exhibit C describing the designations, locations, approximate areas, number of rooms, immediately accessible Common Area and Facilities and other descriptive specifications of the Unit(s) being added to the Condominium, as well as describing any variations in the boundaries of such Unit(s) from those boundaries set forth in Article III, Section D of this Master Deed.
(iii) If the boundaries of the Unit(s) being added to the Condominium vary from those described in said Article III, Section D, the definition of the Common Area and Facilities contained in paragraph E hereof shall be modified, as necessary, with respect to such Unit(s).
(iv) An amended Exhibit C setting forth the new percentage ownership interests for all Units in the Common Area and Facilities of the Condominium based upon the addition of the new Unit(s).
(v) If the Lots designated as appurtenant to the Unit(s) being added to the Condominium vary from those described in Article III Section D and the Site Plan hereof, a description of such variations shall be added so as to identify the *98 new or modified Lots appurtenant to the new Unit(s). Such *295 description of the new or modified Lot appurtenant to the new Unit(s) shall also include a statement as to whether they are to be maintained by the Condominium Trust or by the owner of the Unit(s) to which they are appurtenant.
(v) A revised Site Plan of the Condominium showing the new Unit(s) if not already shown on the existing Site Plan, and floor plan(s) for the new Unit(s) being added to the Condominium, which floor plan(s) shall comply with the requirements of MGLA Chapter 183A.
"...
"E. ... Each owner understands and agrees that as additional phase(s) are added to the Condominium by amendment to this Master Deed pursuant to Declarant's reserved rights hereunder, the percentage ownership interest of his Unit in the Common Area and Facilities, together with his Unit's concomitant interest in the Condominium Trust and liability for sharing in the common expenses of the Condominium, shall be reduced ...."

Fallon is engaged in separate litigation with USAlliance, and was allowed to intervene for the limited purpose of opposing the condominium trust's motion for summary judgment.

The master deed of the Beechwood Village Condominiums provided for the creation of the condominium trust, "the unit owners' organization formed pursuant to the Act" "through which the unit owners will manage and regulate the Condominium."

The 2006 USAlliance mortgage encumbered the developer's interest in lot 7 and in all "structures or buildings, erected or to be erected upon such land, ... and ... all paved walkways, driveways, and parking areas," among other interests.

The Gardner mortgage encumbered "the land and buildings" on lot 7, "together with any and all improvements now or hereafter situated thereon; TOGETHER with all right, title and interest of [the developer], including any after-acquired title or reversion, in and to the beds of the ways, roads, streets, avenues and alleys adjoining the said premises; and TOGETHER with all and singular the tenements, hereditaments, easements, appurtenances, passages, waters, water rights, water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining, including homestead and any other claim at law or in equity as well as any after-acquired title, franchise or license and the reversion and reversions and remainder and remainders thereof; and TOGETHER with all rents, issues, proceeds and profits accruing and to accrue from said premises; and ..." eminent domain awards.

"Lot" is defined by the master deed as "hav[ing] the same meaning as [exclusive use area] and shall mean a Lot, the exclusive right and easement for the use of which is appurtenant to a Dwelling Unit which bears a number identical to the lot number."

The site plan is entitled "Condominium Master Plan 'Beechwood Village' Phase 1" and shows all the lots and the units constructed on three of the lots.

Under the master deed, "Unit" is defined as "a Condominium Unit as that term is defined in [G. L. c. 183A, § 1 ]."

The master deed explains that an "exclusive use area" "has the same meaning as the word 'Lot.' " Each unit has the exclusive right and easement for the use of the lot number that matches the unit number.

An exhibit to the master deed contains a schedule of the percentage interest conveyed by the phase one units, which totaled 99.9 percent. The parties have treated the discharges as discharging 100 percent of the interest in the common area, as do we.

The record contains conflicting information as to the precise number of units that have been constructed. There is some suggestion that some amendments were recorded twice. As nothing in our opinion turns on the exact number of units created, we use fifty-four as the judge did.

The partial discharges were nearly identically worded, other than the lot number designation and address. A typical Gardner partial discharge stated as follows: "[Gardner] releases the following PORTION of the mortgage[d] premises, described as follows: Lot 36 on a certain 'Condominium Master Plan Beechwood Village Phase One' .... The property address for the premises released is 14 Driftwood Land, Rockland, MA." Some of the discharges used the word "unit" rather than "lot." The words were used interchangeably to refer to the discharge or release of the unit, identified by the lot on which it was built.

The parties do not argue that there was any material difference between the terms discharge and release, or in the documents themselves. The only facial difference was that the USAlliance releases were substantially more descriptive, specifically noting that each unit had been conveyed with an undivided percent interest in the common area, language that did not appear in the Gardner discharges. This is not a material distinction. See G. L. c. 183A, § 5 (b ) (1).

See notes 4 & 5, supra.

The judge's unchallenged declarations in the judgment state: "A. USAlliance is the assignee of [the Gardner mortgage].... C. The Gardner Mortgage secures the payment of a $ 1.9 million Promissory Note ... dated May 11, 2006, [and the developer] has not fully paid that note. D. The Gardner Mortgage also secures 'payment of or performance of all other debts' of [the developer] for the benefit of [Gardner] and 'any holder or holders' of the Gardner Mortgage, which now includes USAlliance. E. [The 2007 USAlliance mortgage secured repayment of a] $ 4.7 million Adjustable Rate Promissory Note executed by [the developer, which has not been fully paid]. F. In the 2007 [USAlliance] mortgage, [the developer] granted to USAlliance a security interest in, among other things, [the developer's] rights under article 4 of the Master Deed."

The master deed provides that "[t]he percentage ownership of each Unit in the Common Area and Facilities has been determined upon the basis of the approximate relation that the fair value of each Unit, measured as of the date of this Master Deed, bears to the aggregate fair value of all Units." See G. L. c. 183A, § 5 (a ).

Article 3E(iv) refers to Exhibit C, but the relevant schedule was actually attached as Exhibit B.

Although article 3D(vii) of the master deed, which separately provides that each dwelling unit has the appurtenant right to use the common area (including facilities) other than exclusive use areas in common with other units, may be duplicative of rights of the common owners, it is not inconsistent with a unit's percentage fee interest.

Although in some circumstances the developer may alter these ownership interests by applicable provisions contained in the master deed, see Scully v. Tillery, 456 Mass. 758, 770, 926 N.E.2d 154 (2010) (rights protected by proportionality provisions of G. L. c. 183A, § 5 [a ], can be waived by agreement), no such provisions are contained in the master deed at issue here.

USAlliance contended for the first time at oral argument that the common area is owned by the condominium trust. Arguments raised for the first time at oral argument are waived. Santos v. U.S. Bank Nat'l Ass'n, 89 Mass. App. Ct. 687, 700 n.14, 54 N.E.3d 548 (2016). Even if we were to consider the argument, it lacks support in both fact and law. The record contains no evidence that the condominium trust owns the common land; the declaration of trust creating the condominium trust provides that the condominium trust was created "to manage, regulate, administer ... [the] Condominium." As was done here, "[i]ndividual 'condominium unit owners cede the management and control of the common areas to the organization of unit owners.' " Flynn, 80 Mass. App. Ct. at 288, 952 N.E.2d 934, quoting Berish, 437 Mass. at 263, 770 N.E.2d 961. Likewise, Strauss v. Oyster River Condominium Trust, 417 Mass. 442, 445, 631 N.E.2d 979 (1994), is of no assistance. There, in dicta, the court stated that two of the many unit owners could not claim to be the owner of all of the common area, a proposition that is indisputable.

Despite our clear language in DiBiase Corp., and the statute, we directed "entry of a declaratory judgment consistent with this opinion, declaring that title to the subject land is in the defendants," i.e., the trustees of the unit owner organization. DiBiase Corp., 43 Mass. App. Ct. at 366, 682 N.E.2d 1382. On further appellate review, the Supreme Judicial Court "remand[ed] the matter ... for the entry of a declaratory judgment declaring that title to the subject land is in the unit owners as tenants in common in proportion to their respective individual interests." DiBiase Corp., 427 Mass. at 1004, 691 N.E.2d 548, citing Kaplan, 410 Mass. at 438, 573 N.E.2d 495.

For this reason, the fact that the Gardner partial discharges do not explicitly mention each unit's interest in the common area is not controlling.

The judge construed the last sentence of article 4A to submit phase one to the act and to subject Phase One to the easement rights reserved in article 4B(i), which have expired. Neither Fallon nor USAlliance quarrel with this conclusion.

General Laws c. 183A, § 5 (b ) (2) (iii), provides that an organization of unit owners may extend, revive, or grant rights to add additional units to the condominium with approval of seventy-five percent of the unit owners and fifty-one percent of qualified first mortgagees.