CAROLYN L. THURLOW & another[1] *vs.* SHAW'S SUPERMARKETS, INC.

No. 98-P-255.

Essex. February 17, 2000. - April 27, 2000.

Present: KASS, GREENBERG, & LENK, JJ.

*Negligence,* Grocery store, Hazardous substance. *Notice.*

In a negligence action arising from the plaintiff's slip and fall on a wet floor next to an ice-filled display receptacle in a supermarket, the judge's detailed findings were sufficient to establish the defendant's liability [177-178], and the judge properly awarded special damages for medical expenses incurred due to the aggravation of the plaintiff's preexisting injury [178].

CIVIL ACTION commenced in the Superior Court Department on December 23, 1991.

The case was heard by *Richard E. Welch, III,* J.

*Jonathan Braverman* for the defendant.

*Daniel T. Bowie* for the plaintiffs.

GREENBERG, J. In brief outline: The plaintiff, Carolyn L. Thurlow, appeared at about 11:45 P.M. on August 9, 1990, at the deli counter of the defendant Shaw's Supermarket intending to proceed from there to the dairy section to purchase some milk. As she crossed in front of the fish department, she slipped and fell on a water-soaked rug in a puddle in front of a display case.[2] That mishap caused a meniscal cartilage injury to her left knee and a shoulder strain.

The display case was a twelve-foot wide nonrefrigerated unit

---

[1] Roger Thurlow, husband of Carolyn Thurlow, brought a loss of consortium claim which was decided in Shaw's favor. No appeal is taken from that judgment.

[2] The rugs were replaced once a week by an outside company. In 1990, Shaw's did not maintain any records indicating when these rugs were inspected by Shaw's employees, and the sweep logs maintained by Shaw's contained no information as to inspections of the rugs.

in which various fish products lay in a bed of ice. Attached to the front of the case was an "extender," a smaller shelf or tray that protruded about one and one-half feet from the edge. Products placed inside the extender were also on ice. There was evidence that the fish case was filled with ice in the morning and that ice was replaced two or three times each day. There was no problem, i.e., no leak or unexpected drainage, but on occasion the store manager would observe ice on the floor in the vicinity of the fish case or extender. Thurlow left the store under the impression that she had not sustained any serious injury and assured a store employee who had seen her fall that she was fine. By the next morning, her condition had worsened. She reported the matter to the store manager five days later. Upon a bench trial, a Superior Court judge found in her favor and awarded $42,000 in damages. The issues presented on appeal are whether the evidence was sufficient to support the judge's finding that the defendant was negligent and whether the damage award was consistent with the judge's findings of fact.

One who controls business premises has an obligation "to use due care to keep the premises provided for the use of its patrons in a reasonably safe condition, or at least to warn them of any dangers that might arise from such use, which are not likely to be known to them, and of which the defendant knows or ought to know." *Oliveri* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 165, 167 (1973). Any foreign substance, if unexpectedly encountered by a customer or other invitee on a floor, step, or walkway, can constitute a risk for purposes of imposing liability. The cases are legion. For a representative sampling of substances most often encountered in slip and fall litigation, see Landau, Premises Liability Law and Practice § 8A.100 (1999). Where water has accumulated on the floor of a business establishment as a result of improper supervision, its presence may constitute an unreasonably hazardous condition. See, e.g., *Baggs* v. *Chatham County Hosp. Authy.*, 187 Ga. App. 834, 836 (1988); *Knowles* v. *Klase*, 204 Kan. 156, 159 (1969).

To a large extent, liability depends upon the "opportunity for discovery open to the defendant's employees by reason of their number, their physical proximity to the condition in question, and, in general, the likelihood that they would become aware of the condition in the normal performance of their duties." *Deagle* v. *Great Atl. & Pac. Tea Co.*, 343 Mass. 263, 265 (1961). Li-

ability will only attach if the plaintiff establishes by a preponderance of the evidence that the foreign substance was there long enough that the defendant's employees should have seen it and cleaned it up. See *Welch* v. *Angelo's Supermarket, Inc.*, 27 Mass. App. Ct. 1106, 1106 (1989).

Here, the defendant makes a plausible argument that store employees could not have known of the melting ice or had an opportunity to remove accumulated water. In particular, the defendant points to the lack of evidence that the display case or extender tray drains were malfunctioning. Nor, the argument goes, could its employees anticipate from past experience that small quantities of ice occasionally dropping from the case and melting on the floor might cause injury.

We conclude, however, that the judge's detailed findings, dictated at the conclusion of the trial, are sufficient to establish liability. Appellate courts may not disregard or set aside a trial judge's findings unless they are clearly erroneous. See Mass.R. Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). Appellate review of the facts found at a bench trial does not permit the weighing of the evidence anew. See *Capitol Bank & Trust Co.* v. *Richman*, 19 Mass. App. Ct. 515, 519 (1985); *Spartichino* v. *Commissioner of the Metropolitan Dist. Commn.*, 24 Mass. App. Ct. 965, 965 (1987).

The judge found, among other things, that "the extended ice case was filled by hand and at times, simply the process of customers picking up the items displayed, would occasionally spill some amounts of ice onto the floor." Although sweeps of the entire store floor were performed on a regular basis, the judge found that the last sweep of the floor was at 10 P.M., or about one and three-quarters hours before the accident took place. Based upon that time frame, the obvious nature of the melting, and the fact that at least one store employee was near, the judge concluded that the defendant had constructive notice of the hazard.

Although there was scant evidence demonstrating how much ice had fallen or melted since the last sweep of the floor, the judge did credit Thurlow's assertion that the rug was wet. It is hardly a quantum leap, then, for the judge to infer that the water on the rug had accumulated since the last sweep of the area at 10 P.M. Cases to which the briefs have referred do not involve spills of water onto the floors of retail store premises. There are numerous decisions from other jurisdictions, however,

on which such an adverse inference has been drawn. See, e.g., *Newman* v. *Great Atl. & Pac. Tea Co.*, 100 A.D.2d 538, 538-539 (N.Y. 1984) ("[a] reasonable inference could be drawn that the puddle was formed by a slowly dripping overflow of melting ice from the troughs located under the freezer case, and that such a process would take sufficient time to accumulate so that the defendant could be charged with constructive notice"); *Taylor* v. *Great Atl. & Pac. Tea Co.*, 209 Va. 64, 66-67 (1968) (holding it is reasonable to infer that flaked ice spilled from watermelon display, causing puddle on which plaintiff slipped and fell). Contrast *Hill* v. *Allied Supermarkets, Inc.*, 42 N.C. App. 442, 447-448 (1979) (defendant's motion for directed verdict properly allowed where no evidence as to source of puddle near vegetable bin).

These cases hold water spills from receptacles used to display products are actionable property defects in circumstances similar to the instant case. So far as the case before us is concerned, we are not prepared to say that the judge's finding that "someone at Shaw's reasonably should have been aware of this amount of water on the floor in front of the fish display case [for almost two hours]" is plainly wrong.

The defendant's final contention is that the judge improperly awarded Thurlow special damages for her medical expenses because he failed to take into account evidence of a preexisting medical condition caused by a prior knee injury. However, the judge found that "the medical bills incurred by the plaintiff [were] proximately caused by [the] aggravation of a preexisting injury." We perceive no error in the judge's ruling. Cases which deal with injuries that caused or contributed to the aggravation of a preexisting condition support the judge's ultimate conclusion. See *Wallace* v. *Ludwig*, 292 Mass. 251, 256 (1935); *Higgins* v. *Delta Elevator Serv. Corp.*, 45 Mass. App. Ct. 643, 649 (1998).

*Judgment affirmed.*