GUTIERREZ vs. FLAGSHIP WHARF CONDOMINIUM, 100 Mass. App. Ct. 678

 
 CONNIE GUTIERREZ vs. BOARD OF MANAGERS OF FLAGSHIP WHARF CONDOMINIUM.

100 Mass. App. Ct. 678
 October 8, 2021 - February 2, 2022

Court Below: Superior Court, Suffolk County
Present: Massing, Lemire, & Hand, JJ.

 

Condominiums, By-laws, Management. Practice, Civil, Summary judgment, Declaratory proceeding. Moot Question. Contract, Construction of contract. Declaratory Relief.

In a civil action seeking declaratory relief in a challenge to the propriety of the procedures for an election for two open seats on a board of managers of a condominium association, the plaintiff bore the burden of proof as the party arguing irregularity or seeking to alter the status quo to another party's disadvantage. [682-683]

A claim premised on an underlying argument that was no longer pressed on appeal by the plaintiff in a civil action was moot, and accordingly, this court declined to address the issue. [683]

In a civil action seeking declaratory relief in a challenge to the propriety of the procedures for an election for two open seats on a board of managers (board) of a condominium association (association), this court concluded that, although the board's decision to allow unit owners to vote through an online process and in advance of the annual meeting was permitted under the association's bylaws and was within the board's authority [683-687], the plaintiff was entitled to a judgment declaring that both a requirement that proxy designations be made before the commencement of the meeting without the opportunity to revoke them before the election and the direction of proxy designations to someone other than the clerk did not comply with the requirements of the bylaws [687-688].

CIVIL ACTION commenced in the Superior Court Department on July 2, 2019.

 The case was heard by Susan E. Sullivan, J., on motions for summary judgment.

 Dawn D. McDonald for the plaintiff.

 Douglas W. Salvesen for the defendant.

 HAND, J. The plaintiff is a residential unit owner in the Flagship Wharf Condominium (condominium). After failing in her 2019 bid for a seat on the board of managers (board) of the condominium association (association), she sued the board alleging that

 Page 679 

 its 2019 change in election procedures violated the terms of the association's bylaws (bylaws). The plaintiff filed a complaint in the Superior Court, seeking declarations that (1) she had a right under both the bylaws and the Massachusetts Condominium Act, G. L. c. 183A, § 10 (c), to review certain election documents, including the individual ballots cast in the 2019 election; (2) "the election [was] void as electronic voting is not permitted under the [b]oard's by-laws"; and (3) "even if electronic voting [were] permissible, the election was not carried out according to the terms of the by-laws." [Note 1] The defendant counterclaimed, seeking declaratory judgment that the 2019 election "was in conformity with the By-Law and custom and practice of the association." On the parties' cross motions for summary judgment, the judge ruled against the plaintiff and in favor of the defendant on all claims. [Note 2] The judge did not explicitly declare the parties' rights on the issues identified in the plaintiff's complaint.

 Reviewing the issues de novo, see Dorchester Mut. Ins. Co. v. Krusell, 485 Mass. 431, 435 (2020), we conclude that because the plaintiff's challenge to the board's refusal to provide her with its records of the 2019 election is moot, the portion of the judgment related to count I of the complaint must be vacated. We reverse in part the judgment for the board on count II of the complaint and direct the entry of a judgment declaring that (1) the use of electronic voting did not violate the condominium's bylaws by permitting unit owners to vote remotely and in advance of the annual meeting and (2) the board violated the bylaws in the 2019 election by (a) directing proxy designations to someone other than the clerk and (b) limiting unit owners' ability to revoke their proxies before the commencement of the annual meeting. The judgment is otherwise affirmed.

 Background. The following facts are undisputed. At all relevant times, the condominium included 201 residential units and two commercial units in the Charlestown Navy Yard. The condominium was managed by the board, and its governing documents included the bylaws.

 Page 680 

 The seven board members were elected by the unit owners for staggered two-year terms. [Note 3] The terms of two of the four residential members of the board expired each year. Pursuant to article 3, section 3.7, of the bylaws, in electing the residential board members, the residential unit owners voted using a weighted system based on each unit owner's percentage interest in the condominium's common elements. In addition to authorizing the board to perform a nonexclusive list of managerial responsibilities, the bylaws, at article 2, section 2.2(q), empowered the board to do "[a]nything and everything else necessary and proper for the sound management of the [c]ondominium and the [p]roperty." This discretionary authority included, as the parties agree, running the annual meetings and conducting the elections of the board members.

 Prior to 2019, unit owners voted using paper "Proxy/Ballot" forms. Unit owners were entitled to vote whether they chose to attend the annual meeting or not. If a unit owner attended the meeting, he or she used the proxy/ballot form to indicate their choice of candidates, and then submitted the form while at the meeting. If a unit owner chose not to attend the meeting, then he or she completed the proxy/ballot form by (1) identifying the person authorized to act as proxy on either a general or directed basis, [Note 4] and (2) if using a directed proxy, specifying the candidates for whom the proxy vote could be cast.

 Starting with the 2019 election, the board decided to use electronic balloting and an online voting tool in place of the paper ballots. Under this system, the board provided each unit owner with a link to an electronic ballot for his or her unit. A unit owner could complete the electronic ballot from a personal computer, computer tablet, or "smart phone," or could vote using a computer tablet made available in the condominium building's lobby. The electronic ballots provided unit owners an opportunity to vote for two of four candidates for the two open seats on the board. Unit owners were still able to vote through a general proxy; the board directed proxy designations to the property manager and set a deadline of noon on the day of the annual 

 Page 681 

meeting for revocation of any existing proxy designation. [Note 5] The electronic ballots were made available to unit owners one week before the April 16, 2019, annual meeting. Although unit owners retained the right to vote in person at that annual meeting, they could, and in many cases did, cast their electronic ballots in advance of the meeting itself. [Note 6]

 On April 9, 2019, the plaintiff requested that the board amend the bylaws to address the electronic voting system procedures. The board did not do so, the meeting was conducted as scheduled on April 16, 2019, and the board election was completed electronically. The plaintiff was not elected.

 Within one week of the election, the plaintiff requested that the board provide her with "all documents pertaining to last week's election . . . including but not limited to the actual results and tallies, proxies, etc." The board declined to provide the information.

 The plaintiff commenced the underlying action in July 2019. In count I of her complaint, the plaintiff sought (1) a preliminary injunction requiring the board to "turn over and make all records of the [2019 board] election available for inspection" and (2) a declaratory judgment to the same effect. In count II, the plaintiff sought (1) to have the judge "declare the election void as electronic voting is not permitted under the [b]oard's by-laws," and "alternatively," (2) a judgment declaring that "even if electronic voting is permissible, the election was not carried out according to the terms of the by-laws." [Note 7]

 After a judge denied the plaintiff's request for a preliminary injunction, the board answered the complaint and counterclaimed against the plaintiff, then moved for summary judgment on 

 Page 682 

count II of the plaintiff's complaint. The plaintiff answered, then cross-moved for summary judgment on both counts of her complaint and on the board's counterclaim. After a hearing, the judge granted summary judgment in favor of the board on all the parties' claims. Final judgment entered accordingly, and the plaintiff filed a timely notice of appeal.

 Discussion. 1. Standard of review. We review the summary judgment record de novo, Psychemedics Corp. v. Boston, 486 Mass. 724, 731 (2021), and thus, without deference to the motion judge's assessment of the record. Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass. App. Ct. 515, 517 (2011). In doing so, we ask "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). As to count II, which was the subject of cross motions for summary judgment, "we view the record in the light most favorable to the party against whom the judge allowed summary judgment, here, the plaintiff[]." Marhefka, supra at 516.

 2. Burden of proof. To the extent that it is necessary to the resolution of the dispute to determine which party bore the burden of proof in an action for a declaratory judgment in the Superior Court, we conclude, as did the motion judge, that the plaintiff bore the burden in her challenge to the propriety of the election procedures. See Eliot Discount Corp. v. Dame, 19 Mass. App. Ct. 280, 285 (1985) (burden of proof usually borne by party arguing irregularity or "seeking to alter the status quo to another party's disadvantage"). The cases cited by the plaintiff are not to the contrary. [Note 8] Regardless of which party would have had the burden of proof at trial, however, on summary judgment, "the moving party [would have] had 'the burden of demonstrating affirmatively

 Page 683 

 the absence of a genuine issue of material fact on every relevant issue,'" and on cross motions, "[one party's] failure to show that it was entitled to summary judgment does not mean that [the opposing party is] entitled to the allowance of their cross motion for summary judgment." Khalsa v. Sovereign Bank, N.A., 88 Mass. App. Ct. 824, 829 (2016), quoting Arcidi v. National Ass'n of Gov't Employees, Inc., 447 Mass. 616, 619 (2006).

 3. Count I -- plaintiff's entitlement to election records. Count I of the plaintiff's complaint sought a judgment declaring that the board was required to provide the plaintiff with records of the 2019 board election. See G. L. c. 231A, § 1. In light of the fact that the plaintiff no longer presses her argument that the 2019 election was void, we conclude that the issue is moot. [Note 9]

 4. Count II -- propriety of election procedure. [Note 10] The plaintiff argues that the manner in which the 2019 election was conducted violated the condominium's bylaws in three ways: (1) by allowing unit owners to vote in advance of the annual meeting; (2) in directing that unit owners' proxy designations be made to the property manager, and not the board's clerk; and (3) by limiting the unit owners' ability to revoke their proxy designations "at any time." [Note 11]

 Resolution of these challenges requires us to interpret the bylaws, a process the parties agree is appropriately addressed through the rules of contract interpretation, see Brigade Leveraged Capital Structures Fund Ltd. v. PIMCO Income Strategy 

 Page 684 

Fund, 466 Mass. 368, 373-374 (2013) (corporation's articles of incorporation and bylaws form contract between shareholders and corporation); Merriam v. Demoulas Super Mkts., Inc., 464 Mass. 721, 727 (2013) (same); General Convention of the New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007) (New Jerusalem) (church bylaws form contract between church and members), and amenable to resolution through summary judgment.

 a. Applicable principles. We begin with familiar precepts. "The aim of all interpretation of writings is to ascertain the meaning intended to be attached to the words by the parties who used them, and to effectuate the true purpose of the parties as thus ascertained." Boland v. George S. May Int'l Co., 81 Mass. App. Ct. 817, 827 (2012), quoting Clark v. State St. Trust Co., 270 Mass. 140, 151-152 (1930). As to contracts, "[t]he objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 442 (2006), quoting Massachusetts Prop. Ins. Underwriting Ass'n v. Wynn, 60 Mass. App. Ct. 824, 827 (2004). See Charles I. Hosmer, Inc. v. Commonwealth, 302 Mass. 495, 501 (1939). It follows that "the words of a contract must be considered in the context of the entire contract rather than in isolation," and that "[w]hen the words of a contract are clear, they must be construed in their usual and ordinary sense." New Jerusalem, 449 Mass. at 835. See Charles I. Hosmer, Inc., supra at 501-502.

 b. Bylaws governing annual meetings and voting. The bylaws, at article 3, sections 3.1, 3.2, and 3.7, set out a framework for when, where, and how board elections were held. Section 3.1, "Annual Meetings," provided that an "annual meeting of [u]nit [o]wners shall be held," and that "[a]t such meetings there shall be elected, by ballot of the [u]nit [o]wners, a [b]oard in accordance with [a]rticle 2 of these [b]y-[l]aws" (emphasis added). Section 3.2 provides that "[m]eetings of the [u]nit [o]wners shall be held at the [p]roperty, or at such other suitable place convenient to the [u]nit [o]wners as may be designated by the [b]oard" (emphasis added). Section 3.7, "Voting," states:

"The [o]wner or [o]wners of each [u]nit, or some person (who need not be an [o]wner) designated by such [o]wner or [o]wners to act as proxy on his, her or their behalf, shall be entitled to cast the vote appurtenant to such [u]nit at all 

 Page 685 

meetings of [u]nit [o]wners. The designation of any such proxy shall be made in writing to the [c]lerk, and shall be revocable at any time by written notice to the [c]lerk by the [u]nit [o]wner or [o]wners so designating. Any or all of such [u]nit [o]wners may be present at any meeting of the [u]nit [o]wners and . . . may vote or take any other action in person or by proxy." (Emphasis added.)

 c. Place and time of voting. In arguing that article 3, sections 3.1 and 3.7, required the board to conduct the annual election at a specific time and a specific geographic location -- "at" the place and time of the annual unit owners' meeting -- the plaintiff miscasts the focus of the mandatory language in those sections.

 First, looking individually at the sentences emphasized supra, the use of "shall" is directed to ensuring unit owners had a right and an opportunity to vote, not to the specifics of how the election was to be managed. [Note 12] While we acknowledge that both sections 3.1 and 3.7 of article 3 contemplated voting by a unit owner or a proxy "at" the meetings, we read the bylaws to have permitted voting in that way, but not to have required it. [Note 13] Further, the bylaws did not provide that voting "shall only" take place "at" and during the annual meeting, nor did they impose any limits on where and when, relative to the annual meeting, voting could take place. [Note 14] Cf. Yankee Advertising Co. v. Outdoor Advertising Bd.,

 Page 686 

 18 Mass. App. Ct. 225, 228 (1984) (zoning bylaw providing certain signs "shall be permitted only" in specified circumstances intended to prohibit placement of such signs in other circumstances).

 Second, it is settled that in parsing contract language, "[t]he literal interpretation of any word or phrase may be qualified by the context in which it appears, by the general purpose manifested by the entire contract and by the circumstances existing at the time the contract was executed." Charles I. Hosmer, Inc., 302 Mass. at 501. Here, both the "general purpose" of the bylaws -- ensuring proper and orderly management of the condominium -- and the "the circumstances existing at the time" of their enactment -- the drafters' intent to provide the board with the discretion to adapt its management decisions to the needs of the condominium community -- militate in favor of a broad interpretation, allowing the board to adapt voting procedures to the condominium's evolving needs. Contrary to the plaintiff's argument, interpreting the bylaws in this manner does not "negate" any other article of the bylaws. [Note 15] Read "as a whole, in a reasonable and practical way" (citation omitted), Sullivan, 67 Mass. App. Ct. at 442, the bylaws created a sketch, rather than a blueprint, for managing board elections, leaving the board to determine the best method for conducting those elections.

 Finally, even if it were not the case that the board had the discretion to permit unit owners to vote before votes were called for at the annual meeting and from remote locations, the fact that the electronic ballot required any unit owner not attending the meeting in person to designate a proxy "to represent you and your vote . . . at the meeting" meant that any vote cast by a unit owner who did not appear in person was a directed proxy vote, and so was permitted under article 3, section 3.7.

 We are likewise unpersuaded that our interpretation of section 3.7 allowed the board to usurp rights reserved in the bylaws to the unit owners. It is true, as the plaintiff contends, that the provisions relating to annual meetings and voting rights were included in article 3 of the bylaws under the heading, "Unit Owners." It is

 Page 687 

 likewise correct that article 3 created and protected unit owners' rights, including, inter alia, their entitlement to receive notice of annual meetings, to participate in unit owner meetings, and to vote the owner's weighted ballot personally, or through a proxy. It did not, however, reserve to the unit owners the exclusive right to establish the methods by which the voting was conducted. We conclude that the board's decision to allow unit owners to vote through the online process and in advance of the annual meeting was permitted under the bylaws and was within the board's authority.

 b. Proxy designation. As the plaintiff notes, and as we have discussed, article 3, section 3.7, of the bylaws permitted unit owners to vote by proxy and provided that "[t]he designation of any such proxy shall be made in writing to the [c]lerk, and shall be revocable at any time by written notice to the [c]lerk by the [u]nit [o]wner or [o]wners so designating." Implementing the 2019 electronic voting procedures, however, the board directed unit owners to provide their proxies to the property manager. See n.6, supra. A unit owner could submit their proxy/ballot before the meeting, but could not change the submission once the proxy/ballot was submitted. The plaintiff argues that the board violated both the proxy designation procedure and the bylaw's provision permitting unit owners to rescind their proxies "at any time" in its implementation of the electronic voting procedures by directing that unit owners' proxy designations be provided to the property manager and by requiring unit owners to designate their proxies before the annual meeting began.

 We agree. [Note 16] The language of the relevant sentence in article 3, section 3.7, is mandatory, and we discern no contextual reason for deviating from the requirements of notice to the clerk and revocability at any time before the vote is cast, at least up to the time of the annual meeting. Cf. Charles I. Hosmer, Inc., 302 Mass. at 501. We recognize that the record demonstrates no actual effect on any unit owner's rights or on the outcome of the 2019 election as a result of these deviations from the bylaws. [Note 17] We agree with the plaintiff, however, and thus part ways with the 

 Page 688 

motion judge, in concluding that in an action seeking only a declaration of the parties' rights under a contract (or where, as here, the parties' claims for any other form of relief are not viable), the question is whether the parties complied with the terms of the contract, not the degree to which they did so. Although the board argues that "substantial compliance" is enough to defeat summary judgment here, it points to no precedent for the proposition that actual harm is required in a declaratory judgment action. We are aware of none, and to the extent that the board invites us to create that precedent, we decline to do so. With respect to the plaintiff's claims for declaratory relief, the question is only whether the board acted in compliance with the bylaws, taking into account the language of the bylaws as a whole, including the discretion given to the board and the limiting effect on that discretion by the mandatory wording included in section 3.7. Accordingly, we conclude that the plaintiff is entitled to a declaration that both the requirement that proxy designations be made before the commencement of the meeting, without the opportunity to revoke them before the election, and the direction of proxy designations to someone other than the clerk did not comply with the requirements of the bylaws. [Note 18]

 Conclusion. So much of the judgment as awards judgment to the defendant on count I of the complaint is vacated, and the judgment shall be revised to dismiss that count, not on the merits, but because the claims therein have become moot. See Blake v.

 Page 689 

 Massachusetts Parole Bd., 369 Mass. 701, 708 (1976). So much of the judgment on count II of the complaint as denies the plaintiff's request for a declaration concerning the voting procedures is reversed, and a declaration shall enter stating that (1) the use of electronic voting did not violate the bylaws by permitting unit owners to vote remotely and in advance of the annual meeting; and (2) the board violated the bylaws in the 2019 election by (a) directing proxy designations to someone other than the clerk and (b) limiting unit owners' ability to revoke their proxies before the commencement of the annual meeting. The judgment is otherwise affirmed.

So ordered.

FOOTNOTES
[Note 1] The plaintiff also sought a preliminary injunction and a declaration ordering the board to produce the election documents. 

[Note 2] Although the judge did not explicitly address the defendant's counterclaim in her memorandum of decision, because the counterclaim was the inverse of the plaintiff's claims in count II of the complaint, the ruling addressed the counterclaim. Final judgment entered in the matter, disposing of all claims and counterclaims. 

[Note 3] Article 2, section 2.4, of the bylaws provided for a board comprised of four "Residential Members" and three "Commercial Members." 

[Note 4] A general proxy permitted the proxy to choose the candidate or candidates for whom the unit owner voted; a directed proxy specified the candidate or candidates for whom the proxy was authorized to cast the unit owner's vote. 

[Note 5] Article 3, section 3.7, of the bylaws required that unit owners designating proxies do so "in writing to the [c]lerk." When it initiated electronic voting in 2019, the board directed unit owners to provide any new or amended proxy designations to the property manager (who was not the clerk). The president of the board as it existed in 2019 testified, in substance, that the property manager had acted as the liaison between the board and the vendor ultimately selected to host the online voting process, and that the board designated the property manager as the recipient of any changes in unit owners' proxy designations to ensure that any such designations were transmitted to the vendor of the online voting tool in a timely way. 

[Note 6] One hundred and forty of the 149 votes cast in the 2019 board election were entered into the online voting tool before the start of the annual meeting. 

[Note 7] Specifically, the plaintiff alleged that "[t]he [b]oard's failure to provide proxies to the [c]lerk, failure to require in-person voting by owner or by proxy, as well as the improper calculation of votes" violated the terms of the bylaws. 

[Note 8] See Patriot Power, LLC v. New Rounder, LLC, 91 Mass. App. Ct. 175, 179-180 (2017) (in declaratory judgment action where contract includes obligation and condition that would void contractual obligation, and where condition imposes requirement in form of affirmative act by party seeking to terminate ongoing obligation, burden of proof is on party seeking to terminate obligation); Haskell v. Versyss Liquidating Trust, 75 Mass. App. Ct. 120, 126 (2009) (where plaintiff invoked condition to avoid contractual duty to turn back stock shares, plaintiff bore burden of proof in his declaratory judgment action); Foley v. McGonigle, 3 Mass. App. Ct. 746, 746 (1975) (party asserting benefit of easement retains burden of proof when seeking declaratory relief). 

[Note 9] Indeed, at oral argument, plaintiff's counsel acknowledged that once the election was over, the plaintiff had no further need for the records, and that her claim instead sought an advisory opinion. 

[Note 10] We consider the legal theories fairly raised in the complaint, without limiting our consideration to those expressly invoked in the plaintiff's prayer for relief. See Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass. App. Ct. 479, 487 (1988). As we have discussed, supra, the plaintiff no longer presses her argument that the 2019 election was void (a point we consider to be moot, in any event). See Metros v. Secretary of Commonwealth, 396 Mass. 156, 160 n.6 (1985) (postelection appeal of order denying injunction moot where motion sought specific relief to allow plaintiff's name to be printed on ballot). Because the board continues to hold elections electronically, however, there remains a "real dispute" about whether the election procedures violated the bylaws. See Benefit v. Cambridge, 424 Mass. 918, 921-922 (1997) ("real dispute" as to constitutionality of statute existed despite fact that charges against plaintiff had been disposed of where "district attorney ha[d] not indicated that he [would] refrain from enforcing" that law). 

[Note 11] To the extent that the plaintiff's complaint alleged that "electronic voting is not permitted under the [b]oard's by-laws," she appears to have repudiated that argument. 

[Note 12] As the board argues, the bylaws were silent about many of the details of how unit owners could exercise their entitlement to vote, including the type of ballot to be used, the candidates' eligibility qualifications, the form of the proxy and ballot, the permissibility of absentee ballots, the identity of the person or entity permitted to count ballots, or the methods for resolving ties or other election disputes. 

[Note 13] We are not persuaded that this interpretation renders article 3, section 3.7, inconsistent with section 3.9, "Quorum." Even the quorum required under section 3.9, which provided in relevant part that "the presence in person or by proxy of a majority of [u]nit [o]wners shall constitute a quorum at all meetings of the [u]nit [o]wners," did not require any unit owner's physical presence at the meeting. 

[Note 14] Indeed, past practice indicates a recognition of this fact: the 2015 and 2016 paper proxy/ballot forms included in the appendix specified that "[t]o ensure your vote is recorded, please return your completed [p]roxy/[b]allot to the [m]anagement [o]ffice no later than 4:00 [p.m.] on [the date of the annual meeting], or give it to your designated '[p]roxy [h]older' to bring to the [m]eeting. Proxies must be submitted when signing in at the [m]eeting." The 2017 form, while worded differently, was to the same effect. While the appendix does not include evidence of the starting times for the 2015, 2016, or 2017 annual meetings, the 2019 annual meeting was scheduled to begin at 7 p.m. This evidence suggests that it was accepted practice for unit owners to submit their ballots before the date and time of the meeting, and to rely on the clerk to serve as the conduit for transmission of the completed ballots to the board. 

[Note 15] In her brief, the plaintiff fails to support this contention with any argument or legal citation. See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019). 

[Note 16] We do not agree, however, that the fact that the electronic ballot did not specify a means for revoking a unit owner's proxy amounted to a deprivation of the unit owner's right to revoke his or her proxy. 

[Note 17] We have considered the policy arguments made in the board's brief against nullifying voters' decisions based on technical defects in the voting process. While the cases cited by the board in support of that argument would be persuasive if the plaintiff were seeking a change to the 2019 election results, they are less compelling here, where, as the board itself notes, the plaintiff does not press her original claim that the election was void and seeks only declaratory judgment on the claims set out in count II of her complaint. See Santana v. Registrars of Voters of Worcester, 384 Mass. 487, 491 (1981), S.C., 390 Mass. 353 (1983) (reversing dismissal of plaintiffs' claims for legal and equitable relief based on improper removal from voting lists, reasoning "object of election laws is to secure the rights of duly qualified electors, and not to defeat them" [citation omitted]); Abbene v. Board of Election Comm'rs of Revere, 348 Mass. 247, 250 (1964) (holding objectives of election statute satisfied by board of commissioners' "substantial compliance" and directing board to certify election results); Clancy v. Wallace, 288 Mass. 557, 566-567 (1934) (dismissing plaintiff's petition for writ of mandamus directing election commissioners not to alter original election returns based on commissioners' deviations from statutory requirements concerning recount certification). 

[Note 18] To the extent that the plaintiff challenges the 2019 procedure for designating proxies electronically as failing to comply with the requirement in article 3, section 3.7, that proxy designations be made "in writing," she has failed to provide any legal support for her argument, and we do not consider it. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.