NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1224

YEKATERINA MERKULOVA

vs.

LDJ DEVELOPMENT, LLC, & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Yekaterina Merkulova brought this action alleging violations of the security deposit statute, G. L. c. 186, § 15B, and G. L. c. 93A, after the defendants, Premier Property Solutions, LLC (PPS), and LDJ Development, LLC (LDJ), refused to return $3,400 she paid as a deposit to hold an apartment that she ultimately did not rent and for which she never signed a lease. On cross motions for summary judgment, a judge of the Housing Court concluded that there was no permissible basis under § 15B to charge Merkulova a "hold fee" and ordered the defendants to return the deposit. The judge also concluded that the defendants' failure to promptly refund the deposit constituted an unfair and deceptive practice under G. L. c. 93A

_____

[1] Premier Property Solutions, LLC.

§§ 2, 11, that the conduct was willful and knowing, and that Merkulova was entitled to treble damages.[2]  The judge dismissed the defendants' counterclaims which attempted to justify their retention of the deposit and sought additional damages based on two theories:  detrimental reliance and breach of contract. This appeal followed.  We affirm.

Background.  We summarize the relevant undisputed facts from the summary judgment record as follows.  LDJ is the owner of a residential building located at 80 The Fenway in Boston (the building).  PPS is a property management company which manages the building for LDJ.

In the Spring of 2020, Merkulova was in the process of relocating to Boston from New York to begin a medical residency and was looking for an apartment.  When she and her prospective roommate learned that apartment 41 in the building was available, she expressed interest in renting it through her real estate agent, Morgan Long.  On or about May 2, 2020, Long contacted PPS's leasing and sales manager, Steven Schlom, and asked what would be required to apply for the apartment. According to his affidavit submitted in support of the defendants' motion for summary judgment, Schlom replied that "to reserve the unit" he needed "payment of a first month's rent

_____

[2] The judge also awarded attorney's fees and costs.

2

[$3,400], as a hold fee and completion of a standard Greater Boston Real Estate Board Application for each prospective tenant."  Schlom also indicated that last month's rent and a security deposit would be due at a later date.

Thereafter, Merkulova submitted a rental application, a $30 fee, and wired $3,400.00, which was deposited into an escrow account.  Schlom confirmed that he received the deposit on May 7, 2020.[3]  Then, on May 10, 2020, Schlom changed the status of the apartment on MLS (Multiple Listing Service) to "under agreement" and on the following day he sent a draft lease with a start date of June 1, 2020, to Long.[4]

Over the course of a week or so, the parties negotiated the terms and conditions of the proposed tenancy.[5]  On May 15, 2020, Long informed Schlom that the lease terms were acceptable and that Merkulova "should have the lease back sometime tomorrow." That same day, Schlom released the deposit to PPS by writing a check from the escrow account in the amount of $3,400.00, which

---

[3] In the factual background to their counterclaims, the defendants' alleged:  "On or about May 7, 2020, Schlom received and confirmed receipt of one month's rent to hold the apartment pending application" (emphasis added).
[4] Merkulova's prospective roommate also submitted a rental application and a $30 fee, but she has not participated in this litigation.
[5] The negotiations concerned the removal of furniture and the installation of a key and lock instead of a keypad.

was then deposited into a PPS bank account.  The notation on the check reads: "80 The Fenway #41 -- First Month Rent."

As it turned out, Merkulova decided not to rent the apartment and entered into a lease for a different apartment. On May 21, 2020, Long informed Schlom that the deal had fallen through and requested the return of the $3,400.00 deposit. Schlom replied:  "the deposit was not going to be returned, [it] had already been released to the owner, and instead would be retained as damages per the terms of the Rental Application." Schlom further averred that he was surprised by Long's message as he had been "led to believe" that Merkulova intended to rent the apartment.

Also on May 21, 2020, Schlom relisted the apartment as available for rent on MLS.  However, according to Schlom, there was little interest in the apartment at the advertised rental rate.  The rental price for the apartment was lowered twice and ultimately was rented on June 22, 2020, at $3,000.00 per month with a start date of September 1, 2020.

Within a week of learning that the defendants would not return her deposit, on May 29, 2020, Merkulova sent a demand letter pursuant to G. L. c. 93A.  The defendants again refused to return the deposit.  In their response letter they claimed that Merkulova had breached the contractual provisions of the rental application by failing to execute a lease agreement and

4

that her deposit would be applied to their damages, which included the loss of rent for two months.

As previously noted, Merkulova then brought this action alleging that the defendants had violated the security deposit statute by charging her a hold fee and sought damages for unfair and deceptive practices under G. L. c. 93A. The defendants filed an answer and counterclaims as described above. They further alleged they suffered damages in the amount of $11,600.00, an amount equal to the difference between what the rental would have been if Merkulova had signed the lease and started a June rental, and the amount of rent actually received from June of 2020 to June of 2021.[6] Both parties moved for summary judgment. Following two hearings, the judge denied the defendants' motion,[7] allowed Merkulova's motion, and dismissed the defendants' counterclaims.

Discussion. "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass.

_____

[6] The defendants' answer and counterclaim specified $18,400 in damages, but that amount was modified at the hearing on the motions for summary judgment.

[7] The judge also denied the defendants' motion for reconsideration.

5

117, 120 (1991).  When the parties cross-move for summary judgment, "we view the record in the light most favorable to the nonmoving party against whom the judge allowed summary judgment, here, [the defendants]."  Gutierrez v. Managers of Flagship Wharf Condominium, 100 Mass. App. Ct. 678, 682 (2022), quoting Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass. App. Ct. 515, 516 (2011).  Our review is de novo.[8]  See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 123 n. 1 (1997).

We first address the defendants' argument that the judge erred in granting summary judgment in favor of Merkulova on her claim for violation of G. L. c. 186, § 15B (the statute or Section 15B).  Although our review is de novo, we agree with the judge's reasoning and conclusion.  The undisputed facts establish that the deposit at issue, although equal to the amount of first month's rent and often improperly referred to as such by the defendants, was tendered for the sole purpose of reserving the apartment until such time as a lease was executed. In fact, as Schlom makes clear in his affidavit, Merkulova was required to wire the money to "hold" the apartment.  Because, as the judge correctly determined, Section 15B does not permit a landlord to extract a hold fee from a prospective tenant, the defendants violated the statute.

---

[8] We note that the defendants incorrectly state that the applicable standard of review is for abuse of discretion.

6

The statute states, in relevant part:

"At or prior to the commencement of any tenancy, no lessor may require a tenant or prospective tenant to pay any amount in excess of the following: (i) rent for the first full month of occupancy; and, (ii) rent for the last full month of occupancy calculated at the same rate as the first month; and, (iii) a security deposit equal to the first month's rent provided that such security deposit is deposited as required by subsection (3) and that the tenant is given the statement of condition as required by subsection (2); and, (iv) the purchase and installation cost for a key and lock"

G. L. c. 186, § 15B 1 (b). The terms of this provision are "unambiguous." Mellor v. Berman, 390 Mass. 275, 279 (1983). The statute lists four permissible charges. If a fee is on the list, then it is a permissible upfront charge; if it is not on the list, then it is impermissible. The charge at issue in this case, $3,400 to hold the apartment, is not included on the list of permissible charges. Accordingly, the charge constitutes a violation of the statute.

Furthermore, the fact that the deposit would have been credited towards the first month's rent had Merkulova signed a lease and taken possession of the apartment, does not negate the fact that Merkulova was required to pay $3,400 -- in advance of signing a lease and before she assumed possession -- to reserve the apartment. In sum, in the circumstances presented, the defendants' characterization of the deposit as first month's rent does not insulate them from running afoul of the statute.

7

Next, the defendants assert, with an argument that barely meets the requirements of Mass. R. A. P. 16(a)(9), as appearing in 481 Mass. 1628 (2019), that the judge "wrongfully deemed" their refusal to return the deposit as a violation of c. 93A. This argument is set forth in one sentence within the caption of a subheading without any legal citations.[9]  Despite the brevity of the argument, we understand the defendants' position to be there can be no violation of c. 93A on the ground there was no violation of Section 15B.  This argument cannot succeed given our conclusion that the defendants violated Section 15B and under 940 Code Mass. Regs. § 3.17(4)(a), the Attorney General defines a violation of Section 15B to be an unfair or deceptive practice under c. 93A.

Lastly, we turn to the defendants' assertion that the judge erred in granting summary judgment in Merkulova's favor on their counterclaims alleging detrimental reliance and breach of contract and instead should have granted their motion for summary judgment as to both claims.  Again, we agree with the

---

[9] Failure to provide us with a meaningful argument supported by proper authority may result in a waiver of the argument.  See Lyman v. Commissioner of Correction, 46 Mass. App. Ct. 202, 208 (1999).  Although we do not deem the defendants' argument that there was no violation of c. 93A waived, we consider any challenge to the award of treble damages waived as the defendants make no argument or even mention this aspect of the judgment in their brief.

8

judge's analysis and her conclusion that the defendants are not entitled to judgment as a matter of law on either claim.

The defendants' claim of detrimental reliance is that they took the apartment off the market based on Merkulova's representation that she would execute a lease and then lost money when they subsequently rented the apartment for fewer months at a lower monthly rate. At this stage of the proceedings, to prevail on a claim of detrimental reliance, the defendants must present affirmative evidence to establish:

> "(1.) [a] representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made[;] (2.) [a]n act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made[; and] (3.) [d]etriment to such person as a consequence of the act or omission."

Clickner v. Lowell, 422 Mass. 539, 544 (1996), quoting Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 123 (1992).

Here, the undisputed facts do not sufficiently support the defendants' claim so as to defeat summary judgment in favor of Merkulova. First, Schlom's statement in his affidavit as to the reason why he took the apartment off the market does not establish that Merkulova intended "to induce" him to remove the apartment from the MLS listing if only because, as Schlom acknowledges, he removed the apartment from the MLS listing before he sent a draft lease to Long. No negotiations regarding the lease had begun let alone concluded. Indeed, the defendants

9

had not yet accepted Merkulova's rental application when the apartment was taken off the market.  Furthermore, nothing required Schlom to take this action.  In addition, other than Schlom's statements, the record on summary judgment is devoid of any facts which support the allegation that the defendants lost out on other opportunities to rent the apartment during the short time it was removed from the rental listings.

The defendants' breach of contract claim is similarly unavailing.  This claim stems from the defendants' belief that the rental application is a binding contract which, in the absence of any rejection of the tenancy by the defendants, required Merkulova to execute a lease agreement and, the defendants argue, is supported by a provision of the rental application which states:  "Deposit is to be applied as shown above, or applied to actual damages sustained by the Owner, except it is to be refunded if said application is not accepted by the Owner."  The defendants' theory is that  Merkulova breached the contract when she failed to sign the lease, and subsequently forfeited her deposit according to the above quoted provision of the rental application.

To begin with, the rental application was just that -- an application -- signed only by one person, the prospective

10

tenant.[10]  Second, and more importantly, the provision regarding the retention of damages on which the defendants rely does not comport with the strictures of Section 15B.  Under Section 15B, the only damages recoverable by a landlord from a deposit are specific damages incurred for property damage and unpaid rent and may only be retained from a properly held security deposit, (not a hold fee or first month's rent), which Merkulova had not yet provided.[11]

The defendants' final argument is that a rejection of their breach of contract claim is tantamount to a rejection of freedom of contract.  This argument ignores the express purpose of the statute which is to limit the freedom of contract between landlords and tenants.  "The Legislature enacted G. L. c. 186, § 15B, in response to the 'well known' problems associated with

---

[10] Alternatively, the defendants argue that the rental application constituted an offer to rent the apartment, but they do not specify how or when that offer was accepted.

[11] General Laws c. 186 § 15B (4) provides in relevant part:
"[T]he lessor may deduct from such security deposit for the following:  (i) any unpaid rent or water charges which have not been validly withheld or deducted pursuant to any general or special law[;] (ii) any unpaid increase in real estate taxes which the tenant is obligated to pay pursuant to a tax escalation clause which conforms to the requirements of section fifteen C; and (iii) a reasonable amount necessary to repair any damage caused to the dwelling unit by the tenant or any person under the tenant's control or on the premises with the tenant's consent, reasonable wear and tear excluded . . . . No deduction may be made from the security deposit for any purpose other than those set forth in this section."

security deposits.  Section 15B protects the rights of tenants by, among other things, imposing strict requirements governing the handling of security deposits and restricting the amount of upfront charges that a landlord may collect from a tenant or prospective tenant."  (Citation omitted.)  Flemming v. Greystar Mgt. Servs., L.P., 100 Mass. App. Ct. 469, 471 (2021).  In passing the statute, "the Legislature recognized that tenants have less bargaining power than landlords and are less able to vindicate their rights in court."  Phillips v. Equity Residential Mgt., L.L.C., 478 Mass. 251, 254 (2017), citing Mellor, 390 Mass. at 282.  As the judge aptly observed:  "The rights of landlords and tenants with respect to any pre-tenancy

demands or tenders of money are governed by [G. L. c. 186,

§ 15B] -- not the general application of contract law."[12]

Judgment affirmed.

By the Court (Vuono, Meade &
Walsh, JJ.[13]),

Assistant Clerk

Entered:  March 12, 2024.

---

[12] Both parties have requested an award of appellate attorney's fees and costs.  Merkulova is entitled to such an award; the defendants are not.  Merkulova may, within fourteen days of the issuance of the rescript in this case, submit a detailed and supported submission of the fees sought, in accordance with the procedures set forth in Fabre v. Walton, 441 Mass. 9, 11 (2004). The defendants will have fourteen days thereafter to file a response.

[13] The panelists are listed in order of seniority.