NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-402

RICHARD L. WULSIN

vs.

MARK F. MURPHY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Richard L. Wulsin, and the defendant, Mark F. Murphy, were partners in the law firm of Wulsin & Murphy LLP from 2005 to 2015.  Following Murphy's formal termination of the partnership, Richard[1] filed a single-count complaint against Murphy for breach of contract to recover a debt Murphy had incurred during the first few years of the firm's operation. Murphy denied owing Richard any obligation under the contract and asserted twenty-two counterclaims and third-party claims against Richard, Richard's daughter Rachel Wulsin, and a new law firm that Richard and Rachel had formed, Wulsin Law LLP.  A

---

[1] Because the case involves several members of the Wulsin family, for clarity we refer to them by their first names.

Superior Court judge allowed summary judgment in favor of Richard on his contract claim and on all but two of Murphy's counterclaims.  Following a bench trial on those two counterclaims, for breach of fiduciary duty and civil conspiracy, the judge found for Richard on both.  Murphy appeals from parts of the summary judgment order and from the judgment after trial.  We affirm.

Discussion.  1.  Claims resolved on summary judgment.  In 2005, Richard and Murphy executed a one-page partnership agreement, setting forth the basic financial structure of the firm.  The agreement permitted termination of the partnership by either partner at will with thirty days' written notice to the other.  A side agreement executed simultaneously with the partnership agreement guaranteed Murphy a minimum income during the firm's first two years of operation; if Murphy's earned fees were less than the guaranteed minimum, Murphy was required to repay the difference to Richard, without interest, "no later than December 31, 2015."  The side agreement referred to this debt as the "guaranteed payment amount."  Although Murphy disclaims any obligation under the side agreement, the parties agree that the guaranteed payment amount that accrued under the side agreement was $308,824.16.

2

The judge granted summary judgment for Richard on his claim against Murphy under the side agreement, as well as on Murphy's counterclaims that Richard committed breaches of the partnership agreement and the side agreement and violated the implied covenant of good faith and fair dealing.[2]

"To prevail on a motion for summary judgment, the moving party bears the burden of 'show[ing] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law' based on the undisputed facts." Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 474 (2013), quoting Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). "We review a grant of summary judgment de novo to determine whether, viewing the facts most favorably to the nonmoving party, the moving party is entitled to judgment as a matter of law." Huang v. RE/MAX Leading Edge, 101 Mass. App. Ct. 150, 153 (2022).

a. Side agreement. In response to Richard's claim that Murphy committed a breach of the side agreement by failing to repay the guaranteed payment amount on or before December 31, 2015, Murphy countered that the parties had amended the side

---

[2] The judge also allowed Richard's and Rachel and Wulsin LLP's motions for summary judgment as to Murphy's tort, quasicontract, and third-party claims that had survived previous motions to dismiss. Murphy does not challenge the dismissal or allowance of summary judgment on those claims.

agreement to extend the repayment date for five to ten years and that Richard committed a breach of the amended agreement by demanding payment in January 2016.  Whether the side agreement had been amended hinges on a series of e-mail messages (e-mails) that Richard and Murphy exchanged between June 19 and July 1, 2014, with the subject line "RE: THE FUTURE" ("future" e-mails).  Although we must view the record in the light most favorable to Murphy, see Gutierrez v. Board of Managers of Flagship Wharf Condominium, 100 Mass. App. Ct. 678, 682 (2022), we are not bound to accept Murphy's interpretation of the "future" e-mails.  "Ordinarily the question whether a contract has been made is one of fact.  If the evidence consists only of writings, or is uncontradicted, the question is for the court . . . ."  David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc., 8 Mass. App. Ct. 237, 239 (1979), quoting Bresky v. Rosenberg, 256 Mass. 66, 75 (1926).

The "future" e-mails do not amend the side agreement.  Richard began the exchange by expressing his plan to gradually wind down his practice and his desire to turn over the firm to Murphy, Rachel, and Richard's son Seth.  He then stated, "Over the next five to ten years, as I slow down, I will draw less," and discussed Seth's, Rachel's, and Murphy's anticipated earnings.  After this Richard added, "We need to discuss the

4

guaranteed amount."  Murphy responded by expressing his "hope" that if the firm generated a bonus pool, a "healthy chunk" of Murphy's bonus could be used to repay Richard, and his further "hope" that "we can start that this year" -- that is, 2014. Murphy asked if that "approach" was "ok" with Richard, and Richard responded, "Yes."  While the parties discussed a possible mechanism for Murphy to pay his debt under the side agreement, the parties did not discuss the repayment date for the guaranteed amount, nor did they link the repayment timeline to Richard's plan for retirement.  Indeed, under Murphy's suggested approach, the guaranteed amount could have been paid by December 31, 2015, if the bonus pool was sufficient.  To the extent Murphy claims that the "future" e-mails are ambiguous, "[c]laims of ambiguity . . . do not hold the line against summary judgment if the documents do not reflect ambiguity on the point in question, and the party resisting summary judgment adduces no evidence of ambiguity . . . ."  USTrust v. Henley & Warren Mgt., Inc., 40 Mass. App. Ct. 337, 343 (1996).  In the "future" e-mails, Richard and Murphy began a series of negotiations about the future structure of the firm, but did not "reach a 'meeting of the minds' as to the material terms of a modification."  Sea Breeze Estates, LLC v. Jarema, 94 Mass. App. Ct. 210, 216 (2018).

b.  Partnership agreement.  Murphy also alleged that Richard breached the partnership agreement by making a capital contribution to the firm on Rachel's behalf without Murphy's approval, and by conspiring with Seth and Rachel to reduce Murphy's role at the firm by making Rachel a partner.  The judge granted summary judgment on this claim in favor of the plaintiff, finding that Murphy's allegations of wrongdoing fell outside the terms of the partnership agreement.

"The meaning of a contract, 'what promises it makes, what duties or obligation it imposes, is a question of law for the court.'"  Bright Horizons Children's Ctrs., Inc. v. Sturtevant, Inc., 82 Mass. App. Ct. 482, 485 (2012), quoting Tri-City Concrete Co. v. A.L.A. Constr. Co., 343 Mass. 425, 427 (1962). We interpret the partnership agreement de novo to determine whether Richard violated its terms.  See Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC, 495 Mass. 207, 215 (2025).

The partnership agreement makes no mention of capital contributions and does not set forth a procedure for adding new partners.  Unsurprisingly, then, Murphy has failed to identify the term or terms Richard has violated, and we are likewise unable to discern any violation.[3]  To the extent Murphy argues

---

[3] Murphy also asserts that an issue of disputed fact existed as to whether the side agreement and the partnership agreement constituted one integrated agreement.  Because Richard did not

6

that by making a capital contribution on Rachel's behalf Richard effectively dissolved the partnership without first providing the thirty days' notice required by the partnership agreement, making such a contribution was neither "[i]n contravention of the agreement between the partners," nor was the dissolution effected by Richard's "express will."  G. L. c. 108A, § 31 (2).  This claim is also contradicted by the fact that on July 21, 2025, Murphy provided written notice to Richard of his intent to terminate the partnership (and acknowledged that the guaranteed payment amount remained outstanding).

c.  <u>Implied covenant of good faith and fair dealing</u>.  Murphy also claims that Richard breached the covenant of good faith and fair dealing implied in the partnership and side agreements.  Specifically, Murphy contends that Richard effectively depriving him of the opportunity to pay the guaranteed payment amount from his future bonuses and reneged on his alleged agreement to extend the repayment date in exchange for Murphy's agreement to make Rachel a partner.  Finding that Murphy's claim must fail in the absence of a breach of either of the parties' agreements, the judge granted Richard's motion for summary judgment on these claims.

_____

violate either agreement, that issue is not material, and we need not address it.

7

"Courts interpret partnership agreements in accordance with general contract principles."  Knapp v. Neptune Towers Assocs., 72 Mass. App. Ct. 502, 508 n.9 (2008).  "The covenant of good faith and fair dealing is implied in every contract."  Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004).  This covenant stands for the principle that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Druker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385 (1976), quoting Uproar Co. v. National Broadcasting Co., 81 F.2d 373, 377 (1st Cir.), cert. denied, 298 U.S. 670 (1936).  "A breach occurs when one party violates the reasonable expectations of the other."  Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 287-288 (2007).

As noted, Murphy cannot point to any provision of either agreement that Richard breached.  "The implied covenant of good faith and fair dealing does not create rights and duties not otherwise provided for in the existing contractual relationship."  North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 869 (2009).  While the parties could have included terms for making capital contributions or adding partners to the firm, they did not.  And the summary judgment record does not support Murphy's claim that he and Richard

agreed to amend the side agreement to extend the due date of the guaranteed payment amount in exchange for Murphy's vote to make Rachel a partner.  In the absence of any such provision in either the partnership agreement or the side agreement, Murphy "may not insert these conditions . . . through the side door of the covenant of good faith and fair dealing."  Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 28 (2018).

Moreover, nothing in the summary judgment record suggests that Richard interfered with Murphy's performance under either the partnership agreement or the side agreement.  To begin with, Murphy did not have a "reasonable expectation" of continued access to the bonus pool, considering that the terms of the partnership agreement permitted either party to terminate the partnership at will with thirty days' notice.  In any case, it was Murphy -- not Richard -- whose actions precluded using the bonus pool to cover the guaranteed payment amount when he elected to terminate the partnership.  Even if the so-called "hand grenade" e-mail from Richard to Rachel and Seth suggested a lack of transparency or goodwill toward Murphy, sending the e-mail did not effectuate a breach of either agreement between the parties.

Although the judge denied summary judgment on the issue of whether the "hand grenade" e-mail amounted to a breach of

9

Richard's fiduciary duty, it was not improper for the judge to grant summary judgment on the contractual issues while the fiduciary duty issue remained unresolved.  To be sure, the same conduct may constitute both a breach of the implied covenant of good faith and fair dealing and a breach of fiduciary duty.  See Starr v. Fordham, 420 Mass. 178, 184 (1995).  However, these claims pose entirely different questions to the court.  The implied covenant of good faith and fair dealing is closely bound to the terms of an agreement between the parties, see Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385, cert. denied sub nom. Globe Newspaper Co. v. Ayash, 546 U.S. 927 (2005) ("The scope of the covenant is only as broad as the contract that governs the particular relationship"), whereas fiduciary duties arise from the parties' status as partners and exist independently of any contract.  See Merriam v. Demoulas Super Mkts., Inc., 464 Mass. 721, 727 (2013).  While conduct constituting a breach of the implied covenant of good faith and fair dealing can also constitute a breach of fiduciary duty, the reverse is not necessarily true, if -- as the judge properly found here -- the allegedly bad-faith or disloyal conduct is not governed by the terms of any contract between the partners.  The judge therefore did not err in deciding at the summary judgment

10

stage that Richard had not committed a breach of the implied covenant of good faith and fair dealing.

2. <u>Claims decided at trial</u>. Murphy contends that the judge's findings of fact and conclusions of law as to the claims that proceeded to trial, regarding breach of fiduciary duty and civil conspiracy, were clearly erroneous, warranting reversal of the judgment in Richard's favor. To prevail on his claim against Richard for breach of fiduciary duty, Murphy was required to demonstrate "(1) the existence of a fiduciary duty; (2) breach of that duty; (3) damages; and (4) a causal connection between breach of the duty and the damages." <u>Baker</u> v. <u>Wilmer Cutler Pickering Hale & Dorr LLP</u>, 91 Mass. App. Ct. 835, 842 (2017). Relatedly, his claim for civil conspiracy required a showing, first, that Richard knew that Rachel's conduct "constituted a breach of fiduciary duty," and second, that Richard "substantially assisted in or encouraged that conduct." <u>Id</u>. at 848.

"Where a judge makes findings of fact in a bench trial, we review them for clear error." <u>H1 Lincoln, Inc</u>. v. <u>South Washington Street, LLC</u>, 489 Mass. 1, 13 (2022). A finding is clearly erroneous only when, "although there is evidence to support it, the reviewing court . . . is left with [a] definite and firm conviction that a mistake has been committed"

11

(quotation and citation omitted).  Id.  We do not disturb findings that are supported by "any reasonable view of the evidence, including all rational inferences of which it was susceptible" (quotation and citation omitted).  Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 510 (1997).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  Gallagher v. Taylor, 26 Mass. App. Ct. 876, 881 (1989), quoting Anderson v. Bessemer, 470 U.S. 564, 573-574 (1985).

First, Murphy takes issue with the judge's finding that Richard did not improperly use the outstanding guaranteed payment amount as leverage to force him out of the firm.  The judge considered years of correspondence between the parties, including the "hand grenade" e-mail, but nevertheless concluded that "at no time did Richard . . . improperly use the Guaranteed Amount to leverage anything from [Murphy]."  Although Murphy urges a different interpretation of this evidence, it is not enough that the judge could have read the e-mails differently -- the construction she adopted is permissible, and therefore, not clearly erroneous.  See Gallagher, 26 Mass. App. Ct. at 881.

Additionally, Murphy challenges the judge's findings that Richard's $40,000 deposit on Rachel's behalf resulted in her

12

holding a twenty percent equity interest in the firm[4] and that Richard, in making this capital contribution, did not unfairly deprive Murphy of his rightful share of the firm's assets or wrongfully exclude him from decisions regarding the future of the firm. However, the record amply supports these findings. In e-mails to Richard and during his testimony, Murphy expressly accepted the characterization of the deposit as a capital contribution on Rachel's behalf. Murphy also voted in May 2015 to admit Rachel as a partner, acknowledged her ownership interest in subsequent e-mails, and acted throughout the wind down and dissolution of the firm as though ownership was shared among the three of them. Neither the partnership agreement nor the side agreement contained any provision entitling Murphy to particular benefits or protections in the event of a capital contribution or the admission of a new partner -- indeed, neither agreement mentioned these contingencies at all. Crucially, the judge found "no evidence that either Richard or Rachel received anything of value beyond what they were entitled

---

[4] As an aside, Murphy also argues this finding cannot stand because the judge cited no legal authority to support the proposition that a capital contribution confers equity. That argument misapprehends the nature of the ruling. The court was not articulating a legal principle, but rather was making a factual finding about the firm's ownership structure. Findings of fact need not be accompanied by a citation to legal authority, so long as they are supported by the record. See Greenberg v. Greenberg, 68 Mass. App. Ct. 344, 348 (2007).

13

to or that [Murphy] did not receive money he was otherwise entitled to." It follows that the capital contribution and Rachel's admission as a partner did not represent an unauthorized or otherwise improper dilution of Murphy's stake in the firm, and that Murphy had not been deprived of any contractual or other partnership-related entitlement. The judge's findings to that effect were not clearly erroneous.

Murphy's final contention that it was erroneous "as a matter of law" for the judge to find in favor of Richard on Murphy's claims for breach of fiduciary duty and civil conspiracy is unavailing. Murphy does not argue that the judge has applied an incorrect legal standard, see Makrigiannis v. Nintendo of Am., Inc., 442 Mass. 675, 677-678 (2004), and our review of the judgment reveals no such error. Murphy simply would like us to reach a different conclusion, which is not the proper role of this court. "Appellate review of the facts found at a bench trial does not permit the weighing of the evidence anew." Thurlow v. Shaw's Supermkts., Inc., 49 Mass. App. Ct. 175, 177 (2000). Because the judge's findings are amply supported by the evidence, judgment properly entered in

14

Richard's favor on the claims for breach of fiduciary duty and civil conspiracy.[5]

Judgment affirmed.[6]

By the Court (Massing,
  Neyman & Smyth, JJ.[7]),

Clerk

Entered:  April 1, 2026.

---

[5] Murphy also suggests that Richard deprived him of the opportunity to repay the guaranteed payment amount and that the capital contribution functionally terminated the partnership without the thirty-day notice required under the partnership agreement.  These claims are merely reiterations of the breach of contract claims resolved in Richard's favor at the summary judgment stage, see supra, and we need not address them again here.

[6] Richard's request for fees, costs, and increased interest is denied.  Although we affirm the judgment, Murphy's claims on appeal are not frivolous.

[7] The panelists are listed in order of seniority.